421 A.2d 623

**COMMONWEALTH of Pennsylvania,**

v.

**Glenn Dwayne COUNCIL, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 22, 1980.

Decided Sept. 22, 1980.

Douglas W. Herman, Chambersburg, for appellant.

John R. Walker, Dist. Atty., John F. Nelson, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

KAUFFMAN, Justice.

After a non-jury trial in the Court of Common Pleas of Franklin County, appellant, Glenn D. Council, was convicted of two counts of robbery. The Superior Court unanimously affirmed appellant's judgments of sentence in a per curiam order. We granted allocatur and now affirm.

Appellant contends that the trial evidence does not support his convictions. We disagree. The record shows that on October 7, 1975, at approximately 5:00 p. m., a black male, wearing a dark jacket and a knit cap, his face partially covered with a pink and white towel, ran into Smith's Grocery Store in Fayetteville, Pennsylvania. He first requested toothache medicine from the owner, Mrs. Edna Smith, and then forced her to place the sixty-five dollars in her cash register, in denominations of one and five dollar bills, on the store counter. Mr. Marion Cubeta then entered the store and the robber drew a gun and ordered him to "freeze." After ripping out a candy case in an unsuccessful attempt to find more money, the robber patted Cubeta down, turned out his pockets, and ordered him to put all his money—some fifty cents—on the counter. The robber then scooped the money off the counter, warned Smith and Cubeta to remain silent, and fled.

In the early morning hours of October 8, 1975, after obtaining a search warrant for appellant's hotel room and car,[1] the police seized, *inter alia*, a dark jacket, a knit cap, a toy pistol, a green bag containing sixty-two dollars in de-

1. The evidentiary basis for the warrant is discussed below.

nominations of one and five dollar bills, and a pink and white towel.[2]

At trial, although Smith could not identify appellant, she did identify the towel and hat seized from his car as those worn by the robber. Cubeta, who had identified appellant in a photo lineup conducted immediately after the robbery, testified that he was "positive" that it was appellant who had robbed him.[3] Cubeta also identified the towel, shirt, pants, and jacket seized during the search of appellant's room and car as those worn by appellant during the robbery. The Commonwealth called two additional witnesses at trial who testified that they had seen appellant's distinctive car at the crime scene immediately before and after the robbery.[4]

Because Cubeta conceded at trial that he was unable to identify appellant positively during the preliminary hearing, appellant argues that Cubeta's "in–court" identification testimony should have been disregarded. According to appellant, the other evidence presented "is just as consistent with innocence as with guilt." (Appellant's brief at 25) We disagree.

It is essential to the fair administration of justice that appellate tribunals not sit as second fact–finders. Rather, on appeal the evidence must be viewed in the light most favorable to the verdict winner with all reasonable inferences flowing therefrom. *Commonwealth v. Rose*, 463 Pa. 264, 244 A.2d 824 (1975). When so viewed, the evidence presented below is undoubtedly sufficient to support appellant's convictions. The record shows that Cubeta had an adequate opportunity to observe appellant in good lighting conditions and that he identified his photograph immediately

2. The police also seized pants, a shirt, and an additional fifty–eight dollars and ninety one cents.

3. Appellant does not now challenge the propriety of the lineup identification.

4. Appellant owned an orange 1972 Grand Prix Pontiac with red and white Florida license plates.

after the robbery. Accordingly, the trial court did not abuse its discretion in admitting Cubeta's identification testimony, *see Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976), *cert. denied* 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 757 (1977), and we will not engage in re–evaluating his credibility. *Commonwealth v. Stickle*, 484 Pa. 89, 398 A.2d 957 (1978); *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978) (plurality).

■   Appellant also contends that Cubeta's in–court identification was the result of a suggestive confrontation at his preliminary hearing. Since this claim was not advanced either at the suppression hearing or at trial, it has been waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Compare Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979).

Appellant next claims error because the trial judge refused to recuse himself. When this matter initially was called to trial on January 13, 1976, the Commonwealth sought a continuance because it could not locate Barbara Lee, a critical witness. The prosecutor told the trial court that Lee would testify that on October 7, 1975, she drove appellant to and from the crime scene and that appellant told her that he had robbed Smith and Cubeta. The continuance was granted and trial began on March 30, 1976, but Lee remained unavailable. Appellant contends that the trial judge should have recused himself because his knowledge of Lee's possible testimony prejudiced him against appellant. We do not agree.

■   It is well settled that the burden to show bias and prejudice is always on the party seeking recusal of a judge. A judge's refusal to recuse himself will not be reversed absent a clear abuse of discretion. *Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931). When the question of prejudice has arisen in the context of non–jury criminal trials, our courts have considered whether a judicial fact–finder is more capable of disregarding prejudicial evidence than a lay

jury.[5] We have generally adhered to the prevailing view that judicial fact–finders are capable of disregarding most prejudicial evidence.[6]

**5.** *Commonwealth v. Green*, 464 Pa. 557, 561, 347 A.2d 682, 683 (1975):

> In effect appellant is arguing that the mere exposure to prejudicial evidence is enough to nullify a judge's verdict in a case. We cannot subscribe to such a view, for it is the essence of the judicial function to hear or view proferred evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded. For us to accept appellant's contention would be, in effect, to find disqualification of a judge to be a judge; . . . ."

*Commonwealth v. Williamson*, 243 Pa.Super. 139, 145–56, n.7, 364 A.2d 488, 492, n.7 (1976) ("The verdict of a judge, sitting without a jury, need not be nullified merely as a consequence of exposure to prejudicial evidence."); *Commonwealth v. Blackwell*, 242 Pa.Super. 367, 370, 363 A.2d 1316, 1317 (1976) ("The instant case is free from . . . [a prejudicial] . . . effect on a jury for the obvious reason that appellant's trial was non–jury, and as such his presumption of innocence was maintained."); *Commonwealth v. Conti*, 236 Pa.Super. 488, 497, 345 A.2d 238, 243 (1975) ("[A]n appellate Court can more readily presume proper decision–making when the trier of fact is a judge."); *Commonwealth v. Williams*, 222 Pa.Super. 340, 342, 294 A.2d 758, 759 (1972) ("Unlike the uncertainty that might exist in a jury trial, here we have the court itself making clear that it was giving no effect to the . . . [prejudicial evidence]."); *Commonwealth v. Berkery*, 200 Pa.Super. 626, 699, 190 A.2d 572, 574 (1963), allocatur refused, 202 Pa.Super. XXX, *cert. denied*, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964) ("Judges are human, but they are also specially trained to decide cases on the evidence. They are conscious of the dangers of irrelevant facts and zealously guard themselves against being influenced by any facts not obtained from the evidence.") *See Commonwealth v. Corbin*, 447 Pa. 463, 291 A.2d 307 (1972).

**6.** McCormick, *Evidence*, § 60 at 138 (Cleary ed. 1972); Levin and Cohen, The Exclusionary Rule in Nonjury Criminal Cases, 119 *U.Pa. L.Rev.* 905 (1971); Davis, Hearsay in Nonjury Cases, 83 *Harv.L.Rev.* 1362 (1970); Note, Improper Evidence in Nonjury Trials: Basis for Reversal, 79 *Harv.L.Rev.* 407 (1965); Note, Incompetent Evidence in Nonjury Trials: Ought We Presume That It Has No Effect?, 29 *Ind.L.J.* 446 (1954). *See United States v. Castro*, 413 F.2d 891 (1st Cir. 1969), *cert. denied*, 397 U.S. 950, 90 S.Ct. 974, 25 L.Ed.2d 132 (1970); *United States v. Olsen*, 453 F.2d 612 (2d Cir. 1972), *cert. denied*, 406 U.S. 927, 92 S.Ct. 1801, 32 L.Ed.2d 128 (1972); *United States v. Bolles*, 528 F.2d 1190 (4th Cir. 1975); *United States v. Nicolson*, 492 F.2d 124 (5th Cir. 1974); *United States v. McCarthy*, 470 F.2d 222 (6th Cir. 1972); *United States ex rel. Ford v. Pate*, 425 F.2d 178 (7th Cir. 1970), *cert. denied*, 400 U.S. 843, 91 S.Ct. 86, 27

■ In the instant case, the trial judge expressly noted in his opinion that he gave no effect to the prejudicial evidence:

> For whatever it may be worth, the writer of this opinion, who was the trial judge, can unequivocally state that no consideration was given to any evidence not presented to the Court at the trial, the statements of the Assistant District Attorney made on January 13, 1976, and the defense counsel's reference to the same on March 30, 1976 were totally disregarded. The difference between the expectations of counsel as to what their witnesses will say and the realities of their testimony are a phenomenon well known to Court and counsel. (Opinion of the trial court at 10–11)

Since appellant failed to sustain his burden of demonstrating prejudice, we conclude that the trial judge properly refused to recuse himself.

■ Appellant next contends that evidence discovered subsequent to his conviction requires the grant of a new trial. After an evidentiary hearing, the trial court correctly rejected this claim. State Trooper Gary Carter testified at trial that during his search of appellant's car he found sixty–two dollars in denominations of one and five dollar bills in a green money bag and fifty–eight dollars and ninety–one cents in a tackle box.[7] Although appellant testified at trial, he presented no contradictory evidence.

After trial, appellant allegedly noticed for the first time that the seized bills and coins listed on the property receipt given to him by Carter after the search[8] totalled one hun-

L.Ed.2d 78 (1970); *United States v. Cummings,* 507 F.2d 324 (8th Cir. 1974); *United States v. DeBetham,* 470 F.2d 1367 (9th Cir. 1972), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); *Havelock v. United States,* 427 F.2d 987 (10th Cir. 1970), *cert. denied,* 400 U.S. 946, 91 S.Ct. 252, 27 L.Ed.2d 251 (1970); *Fennel v. United States,* 320 F.2d 784 (D.C. Cir. 1963); *United States v. Harris,* 381 F.Supp. 1095 (E.D.Pa. 1974).

7. This evidence was highly inculpatory because sixty–five dollars in the same denominations had been stolen from Smith's store. (See opinion of trial court at 18).

8. See Pa.R.Crim.P. 2008.

dred and twenty dollars and ninety–one cents rather than sixty–two dollars, and that no mention was made of a tackle box. At the evidentiary hearing, appellant introduced the stipulated testimony of another trooper that a property report prepared by the state police disclosed that one hundred and twenty dollars and ninety–one cents had been found in the green money bag.[9] Appellant testified at the hearing (1) that Carter found nothing during his search of the car (2) that appellant then removed the green bag containing one hundred twenty dollars and ninety–one cents from the car and gave it to Carter, and (3) that Carter removed fifty–eight dollars and ninety–one cents from the bag, leaving sixty–two dollars therein.[10] Carter also testified at the hearing and reaffirmed his trial testimony. He clarified the notations in the property receipt and report by explaining that after discovering the fifty–eight dollars and ninety–one cents in the tackle box, he had placed it in the green bag in which he previously had found the sixty–two dollars.

We have often stated that after discovered evidence will warrant the granting of a new trial only if the evidence (1) was unavailable at the time of trial despite counsel's due diligence to obtain it, (2) is not merely cumulative or offered only to impeach credibility, and (3) is likely to compel a different result. *Commonwealth v. Lee*, 478 Pa. 70, 385 A.2d 1317 (1978); *Commonwealth v. Miller*, 465 Pa. 458, 350 A.2d 855 (1976); *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975). While assuming *arguendo* that ground two had been satisfied, the lower court rejected appellant's claim on the first and third of these grounds. We conclude that the court's decision may be affirmed on either ground. First, the evidence was available to appellant before trial. A copy of the property receipt was served on him upon completion of the search. The receipt was again introduced

9. The property report was introduced at the hearing by the Commonwealth.

10. Significantly, appellant's trial testimony made no reference to these allegations.

at appellant's pre–trial suppression hearing and was append-
ed to the suppression court's opinion. Thus, any ambiguity
in the Commonwealth's evidence could have been raised at
trial.

In addition, the trial court concluded that Carter's expla-
nation of the amount of money he found in the green bag
was credible and disbelieved appellant's belated efforts to
supplement his trial testimony. Thus, the court found that
the evidence was not likely to compel a different result at
trial. In so ruling, the court acted well within its discretion.
*Commonwealth v. Tervalon, supra.*

Finally, appellant contends that the warrant issued in the
early morning hours of October 8, 1975 for the search of his
car and hotel room was not based on probable cause.[11] The
warrant included the following affidavit of probable cause,
sworn to by the state trooper investigating the Smith and
Cubeta robberies:

On the date 7 Oct 75 at approximately 5:00 p.m. investiga-
tion of an Armed Robbery at Smith's Grocery Store RD
# 2 Fayetteville, Pa. along the S. side of US 30 Greene
Twp. Franklin Co. Penna. Armed Robbery committed by
a negro male, 5'9"–5'11", 175 lbs. Lt. colored medium
black hair wearing Brown Jacket Dk. Trousers and dark
hat with Pink towel with white checks over face. Infor-
mation obtained from Charles William BUMBAUGH RD
# 1 Chambersburg, Pa. had seen an orange colored car
Florida Reg. and mag wheels with female operator drop
off a colored male approximate description as above at the
intersection of Brownsville Rd and Black Gap Rd approxi-
mately 500 ft. from the scene of the Armed Robbery at
approximately 4:45 p. m. Vehicle then proceeded to a
church parking lot just south of the Intersection and
parked. Vehicle was also seen by Lawrence W. CUFF 510
Brumbaugh Ave. Chambersburg, Pa. which he described
as a 1972 Orange colored Pont. Grand Prix with Florida

11. The warrant states that the search was for various articles of
clothing and monies connected with the Smith and Cubeta robberies.

Reg. parked in a driveway along Brownsville Rd. at approximately 5:00 p. m. occupied by a colored Female and colored male. Information received from J. Chester DILLER RD # 1 Waynesboro Pa. that said vehicle occupied by Barbara Lee & Glenn COUNCIL was traveling N. on PA 997 in the direction of Scene at approximately 4:00 p. m. Information received from Chief Harold GINGRICH Washington Twp. Police Dept. that he conducted an investigation on the night before involving said Pont. Sdn. and Glenn COUNCIL at the area of Diller's orchard along PA 997 Washington Twp. Franklin Co. Penna. Check with Bureau of Motor Vehicle Florida revealed that Glenn COUNCIL to be a colored male 5'9", 170 lbs. Black hair Brown eyes Date of Birth 4/2/42 and is listed owner of vehicle mentioned. Information obtained from Waynesboro Police Dept. that above subjects are presently staying at Anthony Wayne Hotel Room 425 120 W. Main St. Waynesboro, Pa. and said vehicle parked outside Hotel. Request night time search be made due to Subjects being found at the Anthony Wayne Hotel at 0200 hrs. this date.

Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched. Note 28 *U.Chi.L.Rev.* 664, 687 (1961); See *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Old Dominion Warehouse,* 10 F.2d 736 (2d Cir. 1926) (Hand, J.); Amsterdam, Segal, and Miller, *Trial Manual for the Defense of Criminal Cases,* § 241 (ALI 1971). *See also Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' ")

In determining whether a search warrant is based upon probable cause, "we would do well to heed the sound admo-

nition of *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965)": [12]

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by the nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

When so viewed, giving due deference to the conclusions of the issuing magistrate,[13] the warrant provided ample basis for the police reasonably to believe that the various articles of clothing and proceeds of the Smith and Cubeta robberies would be found in appellant's car and hotel room. Accordingly, we conclude that the evidence seized during the search was properly admitted at trial.

Order affirmed.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

I dissent. The affidavit upon which the arrest warrant and search warrant were issued clearly fails to show probable cause that the appellant either committed the robbery or was in possession of instrumentalities or fruits of the crime. To be valid a warrant must be supported by an affidavit

12. *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971).

13. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ("[A magistrate's] determination of probable cause should be paid great deference by reviewing courts."); *Jones v. United States,* 362 U.S. 257, 270–71, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960).

which states sufficient facts from which the issuing magistrate can reasonably conclude that there is probable cause to arrest or search. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The allegations in this affidavit are so conclusory and insubstantial that a magistrate could not have assessed independently the probability that the appellant committed the robbery or possessed items related to the offense.

In order for the magistrate to conclude independently that the man in an orange car seen by bystanders at the approximate time and place of the robbery was also probably the perpetrator described by the victims, the magistrate would have to know the descriptions given by the victims and by the bystanders. While the affidavit states the victims' description of the perpetrator's physical characteristics and clothing, there is no similarly detailed description given by the bystanders. Indeed, the only detailed description which the bystanders give is of an orange car with Florida license plates which they saw occupied by a "colored male" in the area of the crime at about the time the crime was committed. The description of the car and its presence in the neighborhood, however, are irrelevant to a finding of probable cause because nothing in the affidavit shows the car to be connected with the crime.

Notwithstanding the irrelevancy of the description of the car, probable cause would be established if there were sufficient facts concerning the physical characteristics and clothing of the "colored male" seen in the car so that the magistrate could reasonably conclude that this man and the perpetrator of the crime were the same person. As to the first bystander, however, the affiant merely states that this witness saw a "colored male approximate description as above," referring to the description given by the victims. The phrase "approximate description as above" is fatal to the warrant. It tells the magistrate only the police officer's conclusion that the witness' description was similar to that of the victims. It does not tell the magistrate the witness'

actual description, facts which would allow a "neutral and detached" magistrate to form his own independent judgment. *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). As to the second bystander, the affidavit states only that he saw "a colored Female and colored male."

The only description of the appellant more specific than "colored male" which was given to the magistrate was that allegedly obtained by the police officer from the Florida Motor Vehicle Department's record describing the owner of the orange car as "a colored male 5'9", 170 lbs. Black hair Brown eyes Date of Birth 4/2/42." While the race, height and weight characteristics conform to the description given by the victims, this general description alone, because it fits many individuals, is an inadequate factual basis upon which to conclude that there is probable cause. Of course, as indicated above, this might be a different case if the victims had mentioned the car in their report of the robbery, as they did not here, thereby providing a connection between the car, its occupants, and the crime.

The majority's blithe deference to the "conclusions of the issuing magistrate," which are founded on inadequate facts and the affiant's conclusory allegations, ignores the substantive probable cause requirements of the Fourth Amendment and the protection which the "neutral and detached" magistrate's determination of probable cause is designed to provide. As stated in *Coolidge v. New Hampshire,* 403 U.S. 443, 449, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564 (1971) (search warrant issued by law enforcement agent invalid):

"The classic statement of the policy underlying the warrant requirement of the Fourth Amendment is that of Mr. Justice Jackson, writing for the Court in *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436:

'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection con-

sists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . .' "

I would reverse appellant's conviction and grant a new trial.