**Northeast Land Development Co., Inc. v. D.E.R.**

*Kenneth Gelburd*, for Commonwealth of Pa., D.E.R.

July 15, 1983—

## PROCEDURAL HISTORY

Sometime prior to May 7, 1982 Northeast Land Development Company, Inc. (Northeast or appellant) filed with DER an application for a permit for a solid waste disposal site proposed to be located in a mine pit owned by Beltrami Enterprises, Inc. located in Kline Township, Schuylkill County. On May 7, 1982 DER, through its solid waste facilities supervisor, David J. Lamereaux, issued a letter identifying the above application as I.D. No. 300690 and requesting additional information concerning side slopes and compliance history. By letter dated July 28, 1982 DER denied Northeast's application I.D. No. 300690 citing 6 reasons. Four of these reasons discuss alleged problems with the site, the sixth reason asserts that complete answers have not been provided to DER's compliance history questionnaire, module 10. The final reason stated is that "[t]he Department has determined that the applicant lacks the ability or intention to comply with the Solid Waste Management Act." Northeast promptly filed an appeal from DER's denial and on November 17, 1982 it filed its prehearing memorandum.

DER answered appellant's pre-hearing memorandum by filing its own pre-hearing memorandum on December 2, 1982. DER asserted and Northeast did not deny that a copy of DER's pre-hearing memorandum was served upon Northeast on or about December 3, 1982.

In its pre-hearing memorandum DER asserts that Mr. Louis Beltrami, a principal of Beltrami Enterprises, Inc. and Northeast, had a long standing association with organized crime. DER attached to its pre-hearing memorandum a 1980 Pennsylvania Crime Commission report upon

which it relied to support its assertions concerning Mr. Beltrami. It was not until the morning of the first date set for hearing in the above matter, March 15, 198 (3½ months after its receipt thereof) that Northeast brought to the attention of either DER or the EHB that it considered DER's pre-hearing memorandum to contain scandalous or impertinent subject matter. Even then, Northeast did not attempt to have the DER pre-hearing memorandum stricken in whole or part but rather presented a motion . . . "that each and every member of the Environmental Hearing Board disqualify himself from sitting in determination of this hearing by reason of adverse interest or prejudice." The motion asserted no grounds for any adverse interest. The motion for recusation stated as a ground for prejudice, that the members of the Environmental Hearing Board, having read the pe-hearing memorandum and attached 1980 Crime Commission Report would be so "inflame[d]" as to completely lose their "ability to make a fair and reasonable decision."

The hearing examiner at the hearing of March 15, 1983, then Chairman of the EHB, the Honorable Dennis J. Harnish, allowed oral argument at side bar by counsel for DER and Northeast on Northeast's motion. During this side bar conference counsel for Northeast was informed that Mr. Harnish had read the DER pre-hearing memorandum but not the attached Crime Commission Report and that, to the best of his understanding, neither of the other two members of the board had read even DER's pre-hearing memorandum. Mr. Harnish also informed Northeast's counsel that reading DER's pre-hearing memorandum had not, in his opinion, robbed him of his ability to make a fair and impartial determination. Mr. Harnish also volunteered, as a courtesy to Northeast's counsel,

that in his opinion recusal of the entire EHB would deprive Northeast of a meaningful opportunity to obtain review of DER's permit denial, i.e., that Commonwealth Court and the various Courts of Common Pleas would probably refuse to take jurisdiction over any original action filed by Northeast to obtain review of DER's permit denial on the basis of such doctrines as (Northeast's) failure to exhaust statutory and administrative remedies.

In spite of the above statements and advice, Northeast's counsel failed to withdraw his motion or limit its applicability to Chairman Harnish. Therefore, after hearing argument from both counsel, Mr. Harnish recessed the proceeding and repaired to his office where he conducted legal research on the motion and discussed the matter with one of the two other members of the EHB, the Honorable Anthony J. Mazullo, Jr.

On the basis of this research and this discussion, Mr. Harnish, upon reconvening the hearing, denied Northeast's motion. Mr. Harnish's reasons for denial as stated on the record on March 15, 1983 were as follows:

"At this point in time, we're going to deny the motion. The reasons for denying the motion are basically two. The first reason is that it's the duty and function of the Environmental Hearing Board, as I understand it, to hold hearings and issue adjudications on matters that have been properly appealed to it. It's a duty we take quite seriously.

And we note, and have, in fact, advised the Appellant's attorney that if we did recuse ourselves, all three members of the Board, it's quite probable that the Appellant would have no legal chance to obtain the relief that they solicit here, because Commonwealth Court would probably turn them down on the legal grounds.

The second reason is that even though the Board is very—and each of the members of the Board— are very concerned about Motions for Recusation and are very concerned that the public at large doesn't perceive us and, in fact, that we don't sit on cases that we shouldn't sit on, we have to put this matter in perspective.

I should state for the record that I have reviewed the pre-trial memorandum of the Commonwealth, but I have not reviewed the portions of the Crime Commission report that are apparently attached to that pre-trial memorandum.

It has been the position of the Board in other matters that a pre-trial memorandum does not even rise to the dignity of a pleading. It's merely for the Board's convenience so that we know what positions the various parties are likely to take in a matter.

However, assuming for the sake of this argument that a pre-trial memorandum is a pleading, we feel that the relief requested by the Appellant goes beyond the relief that could be requested, for example, in a Common Pleas Court.

There are motions to strike scandalous and impertinent matter from pleadings, and such motions are sometimes granted by the court. But after research, I am unaware of any situation in which a court has been so prejudiced by merely reading a pleading that they decided that they wouldn't sit on the case.

And I think the reason for that goes to the basis of the adversarial system of law in this country: namely, that pleadings are pleadings, and evidence is evidence; and they are two very different concepts.

So the fact that somebody puts something even in a pleading, which is sworn to, as opposed to a pre-

trial memorandum, which is not, doesn't make it evidence in a matter.

And for this other reason, we are also going to deny the Motion for Recusation."

Following the above denial of the motion for recusation on the record, the hearing examiner, without objection, granted the petitions to intervene of Mr. Richard P. Misliktsky, Esq. (in absentia) and of the Honorable James Rhoades, Senator from the 29th Senatorial District.

## DISCUSSION

In cases where a dissapointed applicant appeals from DER's denial of its application, the board's regulations imposes the burden of proceeding and burden of proof upon the applicant, 25 Pa. Code §21.101(c)(1). In spite of this requirement, of which its counsel was advised, Northeast failed to call a single witness.

Instead, Northeast's counsel made the following statement on the record:

"The point that I would like to bring forth is that, under the circumstances, despite your denial of the motion, the Appellant still feels that it cannot have a fair presentation of its burden to overcome the denial of the DER because of its pre-trial memorandum.

While it may not have the dignity of evidence, it's still a prevasive document which has been submitted to the trier-of-fact, and that as a result of which, the Appellant, Northeast Land Development Company, no matter what it presents and no matter how high its burden is met as concerns the allegations listed in the denial, it could not prevail; and that without saying or even intoning that perhaps the Board would be prejudiced, the mere fact that the

document exists, the aura of prejudice has been raised, and the inability of the Board to make an impartial decision is patent in the document; and as such, *the Appellant will not proceed further and will elect to stand on the records and documents that have been submitted or will be submitted by stipulation here.*" (Emphasis supplied.)

Following Northeast's election not to present testimony, the entire application for Northeast's proposed landfill site was admitted by stipulation as Exhibit No. S-1. The only other exhibit which was admitted (as appellant's Exhibit 1) was a letter dated May 20, 1982 which Northeast's counsel asserted sending to DER but which DER denied receiving.

The record in this matter was then closed and DER's counsel made an oral motion for summary judgment. A briefing schedule was set and briefs have now been received from Northeast and DER. This adjudication was drafted by Dennis J. Harnish, Esq., upon request and under authorization of the EHB and has been reviewed and approved by the sitting members of the EHB.

## A. THE MERITS

Due to the somewhat unusual procedural posture of this case there can be little or no summation of the testimony since there was almost none presented. Moreover, little or no discussion of the documentary evidence is merited. Northeast's brief failed to demonstrate how the application and/or its letter of May 20, 1982 supplied the information stated to be missing by DER's denial letter of July 28, 1982.

Northeast as the would-be permittee clearly has the burden of proof in this matter. Township of Middle Paxton, et al. v. DER, EHB 80-127-W, (is-

sued June 30, 1981) 1981 EHB 315. It has just as clearly failed to make any showing that DER has abused its discretion or violated law in denying Northeast's permit. Thus, we uphold DER's denial.

## B. THE RECUSATION ISSUE

The parties have chosen to answer and brief the Northeast's motion for recusation even though that motion had been denied at the hearing. In one sense there is no need for a further discussion of this matter. Northeast sought no consideration of the motion by the hearing examiner or by the board en banc. 25 Pa. Code §21.122. The propriety of the hearing examiner's ruling is therefore not for this board, but rather, for a reviewing court (if any) to determine. Nevertheless, as a courtesy to any reviewing court and by way of accomodation to the parties, we adopt the hearing examiner's ruling on Northeast's motion for recusation as well as the reasons he stated for said denial.

In so doing we start from and adopt the proposition, cited by Northeast's counsel, that:

"A fair trial in a fair tribunal is a basic requirement of due process . . . that due process applies to administrative agencies just as it does to courts . . . that administrative tribunals must be unbiased and must avoid even the appearance of bias to be in accordance with principles of due process. Dayoub v. Commonwealth of Pennsylvania, State Dental Council and Examining Board, 453 A. 2d 751 (Pa. Commonwealth 1982)"

This general proposition, however, doesn't resolve the question of whether the hearing examiner's review of DER's pre-hearing memorandum impaired Northeast's ability to obtain a fair hearing before that examiner.

In this regard we note that Northeast has the burden to show both that the complained of matter in DER's pre-hearing memorandum was scandalous and impertinent and that exposure of the trier-of-fact thereto caused bias and prejudice. Com. v. Council, 491 Pa. 434, 421 A. 2d 623 (1980). We do not believe that Northeast has shouldered either part of this twofold burden. Turning first to the issue of whether the allegations in DER's pre-hearing memorandum were scandalous and impertinent we note, as stated in Goodrich-Amram 2d § 1017(b):8 (at page 59) "Facts not material to the issue are impertinent and if reproachful, are scandalous." Conversely, of course, even reproachful facts are not scandalous if relevant and material.

The instant appeal arises from DER's denial of Northeast's application for a solid waste disposal site. Pursuant to §503(c) of the Solid Waste Management Act, 35 P.S. §6018.503(c), when reviewing a permit application for a solid waste management permit DER is empowered to and its duty shall be to consider whether the applicant and, in the case of corporate applicants, the principals thereof, have demonstrated the ability or intention to comply with the Solid Waste Management Act, as well as other cited acts. On-going close contact between an applicant and organized crime certainly would seem to be relevant to and material to the issue of whether said applicant possessed the requisite intention or ability to comply with *any* statute. Therefore assertions of such contacts even though "reproachful" would not fall within the definition of scandalous and impertinent subject matter and thus would not be stricken from pleadings. Quick v. Lichtenwalner, 84 D. & C. 546 (1952); DeMeo v. Bullock, 55 D. & C. 2d 789, (1972).

Even assuming arguendo, that DER's pre-hear-

ing memorandum did contain scandalous and impertinent assertions, Northeast still has failed to demonstrate that the mere exposure of the hearing examiner to these assertions caused him to become biased or prejudiced against Northeast.

In Council, supra, the prosecutor, in seeking a continuance, made representations to the trial court concerning the testimony of a witness he could not locate. Counsel asserted that the missing witness drove defendant's getaway car. The continuance was granted but this witness remained unavailable at the time of trial. Defendant-appellant contended that the trial judge should have recused himself on the ground that his knowledge of the proposed testimony prejudiced him against defendant-appellant. In affirming the trial court's verdict, the Supreme Court noted that a judge's refusal to recuse himself will not be reversed absent a clear abuse of discretion. Crawford's Estate, 307 Pa. 102, 160 A. 585 (1931). Moreover, the court held that as between judicial fact-finders and lay juries, the former were more capable of disregarding prejudicial evidence. Indeed, the court stated " . . . it is the essence of the judicial function to hear or view proferred evidence . . . and to decide whether or not it should be admitted into evidence . . . For us to accept appellant's contention [that the mere exposure to prejudicial evidence is enough to disqualify a judge] would be, in effect, to find disqualification of a judge to be a judge." Com. v. Green, 464 Pa. 557, 561 347 A. 2d 682, 683 (1975).

Northeast attempts to distinguish Council, supra by asserting that the pre-hearing memorandum in this case is somehow more prejudicial than the summarized testimony in Council, supra. It's hard to imagine how something could be more prejudicial in a criminal trial than statements implying

that defendant "did it." This would-be distinction doesn't wash. Also inapposite is Northeast's suggestion that because Council, supra involves a criminal matter (which involves a higher standard of proof than an administrative hearing) a little prejudice isn't so harmful. We agree with DER that if any distinction should be made about the impact of prejudicial evidence on a trier-of-fact as between criminal and administrative matters, the higher standard should be assigned to the criminal matters where the potential for loss of liberty (and perhaps even of loss of life) is present. Finally, with regard to this argument, we note that according to EHB practice a pre-hearing memorandum does not even constitute a pleading much less evidence. Just because a party makes assertions in a pre-hearing memorandum doesn't mean that the hearing examiner assigns probative value to such assertions. As the trial judge said in Council, supra (as quoted by the Supreme Court in its opinion), "[T]he difference between the expectations of counsel as to what their witnesses will say and the realities of their testimony are a phenomenon well known to Court and counsel." Thus, we hold that even if Northeast had demonstrated that DER's pre-hearing memorandum contained scandalous matter the hearing examiner's review of this matter would not support Northeast's motion.

## FINDINGS OF FACT

1. The application no. 300690 submitted by Northeast for a landfill permit in Kline Township, Schuylkill County was not complete for the reasons stated in DER's denial letter of July 28, 1982—a copy of which is attached hereto as Exhibit A.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and subject matter.

2. The applicant (Northeast) has the burden of proof in a permit denial case.

3. Appellant (Northeast) has failed to demonstrate that DER's denial of its application was arbitrary, capricious or in violation of law.

4. In order to support its motion for recusation, the moving party (Northeast) had the burden of proving that DER's memorandum contained scandalous and impertinent matter and that exposure to this pre-hearing memorandum had caused the hearing examiner to become biased against Northeast.

5. Northeast failed to sustain its burden on both the above stated issues.

6. A hearing examiner's decision on a motion to recuse will not be disturbed unless it constitutes an abuse of discretion. No such abuse of discretion took place in the instant case.

## ORDER

And now, July 15, 1983, Northeast's appeal is dismissed and DER's denial of Northeast's landfill permit application I.D. no. 300690 is sustained.