839 A.2d 237

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Carolyn Ann KING, Appellee.**

Supreme Court of Pennsylvania.

Submitted July 16, 2002.

Decided Dec. 30, 2003.

Ronald Thomas Williamson, Norristown, Robert William McAteer, Philadelphia, Robert A. Graci, Pittsburgh, for the Com. of Pa., appellant.

Kelly Ann Cloak, Thomas B. Schmidt, Harrisburg, for Carolyn Ann King, appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice NIGRO.

In this Post–Conviction Relief Act[1] ("PCRA") case, we granted the Commonwealth's petition for permission to appeal in order to determine whether the PCRA court properly granted Appellee Carolyn Ann King's motion for recusal. For the following reasons, we affirm the order of the PCRA court.

In 1994, following a jury trial before the Honorable Robert J. Eby of the Court of Common Pleas of Lebanon County, Appellee Carolyn Ann King and her co-defendant Bradley Martin were convicted of first-degree murder and related offenses and sentenced to death for fatally suffocating Guy Goodman in the course of robbing him in his home. On appeal, this Court affirmed, *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763 (1998), and the United States Supreme Court denied *certiorari*. *King v. Pennsylvania*, 528 U.S. 1119, 120 S.Ct. 942, 145 L.Ed.2d 819 (2000) (mem.). Following the denial of *certiorari*, then-Governor Ridge signed a death warrant for Appellee, scheduling her execution for March 29, 2000.

On February 11, 2000, Appellee simultaneously filed an emergency motion to stay her execution and a timely *pro se* PCRA petition. One week later, on February 18, 2000, now-President Judge Eby denied Appellee's emergency motion for a stay and issued a notice of intent to dismiss her *pro se* PCRA petition. Appellee subsequently filed an emergency motion to stay her execution with this Court, which we granted in a *per curiam* order, staying her execution pending the filing and disposition of an amended, counseled PCRA petition.[2] *Commonwealth v. King*, 561 Pa. 144, 748 A.2d 1232 (2000) (per curiam). Pursuant to that order, Appellee filed an amended, counseled PCRA petition, in which she lodged numerous claims of constructive denial of counsel and ineffective

1. 42 Pa.C.S. §§ 9541–9546.

2. Although we initially issued an order denying the emergency motion for a stay, on reconsideration, we vacated that order in our subsequent order granting the stay. *King*, 748 A.2d at 1232.

assistance of counsel, including claims that the appointment of "a civil practitioner with no relevant experience, or training" as trial counsel and the failure of Lebanon County ("the County") to provide adequate standards and resources for appointed counsel in capital cases had constructively denied Appellee the assistance of counsel.[3]  R. at Ex. 76 (Appellee's amended PCRA petition at 45).

On May 30, 2001, Appellee filed a motion requesting President Judge Eby to recuse himself from the remainder of Appellee's PCRA proceedings, arguing that recusal was warranted because: (1) President Judge Eby's impartiality might reasonably be questioned in deciding whether his appointment of inexperienced trial counsel was constitutional; (2) President Judge Eby's impartiality might reasonably be questioned in deciding whether the County's fee and expenditure restrictions for defense counsel in capital cases were constitutional because, according to Appellee, the President Judge had devised those restrictions;  and (3) President Judge Eby had personal knowledge of disputed evidentiary facts, specifically, whether the County maintains adequate standards for the appointment of counsel in capital cases and whether it provided adequate resources for Appellee's defense.  Although President Judge Eby, upon considering Appellee's motion, concluded that "none of the arguments presented by [Appellee] support[ed] her request for [his] recusal," R. at Ex. 101 (PCRA Ct. Op. at 14), he nevertheless recused himself in order to expedite the disposition of Appellee's PCRA petition. Additionally, he requested the assignment of a judge from outside of the County to preside over the remainder of Appellee's post-conviction proceedings.[4]  At the Commonwealth's

3.  Following the filing of Appellee's amended PCRA petition, the Commonwealth, through the Lebanon County Office of the District Attorney, successfully moved for the appointment of the Office of the Attorney General as a temporary special assistant district attorney pursuant to 16 Pa.C.S. § 1420.  *See* 16 Pa.C.S. § 1420 ("The district attorney may appoint temporary assistants ... to assist him in the discharge of his duties...." Any attorney-at-law, including a deputy Attorney General or an attorney employed by the Commonwealth, may be appointed under this subsection.).

4.  The parties aver that in accordance with this request, a judge from outside of the County has been assigned to preside over Appellee's PCRA proceedings.

request, President Judge Eby certified this interlocutory order regarding his recusal for appeal. The Commonwealth then filed a petition for permission to appeal to this Court, which we granted.

In general, a motion for recusal is properly directed to and decided by the jurist whose participation the moving party is challenging. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 370. In filing a motion for recusal, the moving party must allege facts tending to show bias, interest or other disqualifying factors. *Reilly v. Southeastern Pa. Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291, 1300 (1985). In turn, once the judge decides whether to preside over the case, that decision is "final and the cause must proceed." *Id.* at 1300.

■ Although it is well-established that this Court may review the *denial* of a motion for recusal to determine whether the lower court abused its discretion in refusing to recuse itself, *see Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998), this Court has not yet considered the standard for reviewing the *grant* of a motion for recusal, such as the one at issue here.[5] In reviewing the *denial* of a recusal motion to determine whether the judge abused his discretion, we "recognize that our judges are honorable, fair and competent." *Reilly*, 489 A.2d at 1300. Based on this premise, where a judge has refused to recuse himself, on appeal, we place the burden on the party requesting recusal to establish that the judge abused his discretion. *See Commonwealth v. White*, 557 Pa. 408, 734 A.2d 374, 384 ("It is Appellant's burden to establish that [the judge] abused his discretion by denying her recusal motion."). Of course, it is self-evident that the characteristics of our judges do not change according to whether they recuse themselves from a particular case or not, and as such, where a judge has, in fact, recused himself, we must proceed on a similar premise, recognizing that our

5. In fact, neither party has cited to a single case from this Commonwealth or, for that matter, any other jurisdiction, in which a court has reviewed a judge's decision to recuse himself. Similarly, our review of the case law of this Commonwealth and other jurisdictions yields no such decisions.

"honorable, fair and competent" judges do not grant recusal motions lightly. Therefore, where a judge has decided to recuse himself, we must place the burden on the party opposing recusal to establish that the judge did in fact abuse his discretion in doing so.[6]

Here, the Commonwealth cites to *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 753 (2000), in support of its argument that President Judge Eby abused his discretion by granting Appellee's motion for recusal.[7] In *Widmer*, 560 Pa. 308, 744 A.2d 745, 753 (2000), we explained the abuse-of-discretion standard in depth:

"The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or *where the law is not applied* or where the record shows that the action is a result of partiality, prejudice, bias or ill will."

*Id.* at 753 (emphasis added) (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1185 (1993)). Relying on *Widmer*, the Commonwealth specifically argues that because

6. Indeed, both the Commonwealth and Appellee appear to agree that the standard applicable here is one of abuse of discretion. Moreover, given the extraordinary nature of the remedy for a judge's improper recusal, *i.e.*, ordering the judge to preside over a case from which he saw fit to recuse himself, ·it is more than appropriate to place the burden on the party opposing recusal to demonstrate that there has been an abuse of discretion.

7. The Commonwealth also argues that Appellee's claims regarding her allegedly inexperienced trial counsel and the County's limits on expenditures in capital cases are not cognizable under the PCRA. Given that the PCRA court has not yet ruled on any of the claims in Appellee's amended PCRA petition, it would be premature for us to consider the Commonwealth's claims here, and therefore, we decline to do so. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 733 (2002) ("[T]he absence of a trial court opinion can pose a 'substantial impediment to meaningful and effective appellate review.' ") (citing *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998)).

President Judge Eby recused himself on grounds other than those alleged by Appellee in her recusal motion, grounds which the President Judge explicitly found did not require his recusal, he necessarily failed to apply the law, and, therefore, abused his discretion.

The Commonwealth's logic is flawed, however, as both the Code of Judicial Conduct and our caselaw allow a judge, of his own volition, to decide that recusal is appropriate for reasons other than those advanced by one of the parties. *See* Code of Judicial Conduct Canon 3(C)(1) (providing that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned" but cautioning that such instances "include[e] but are not limited to" those enumerated immediately thereafter); *see also Reilly*, 489 A.2d at 1298 ("Canon 3 C, like the whole of the Code of Judicial Conduct, does not have the force of substantive law, but imposes standards of conduct to be referred to by a *judge* in his *self-assessment* of whether he should *volunteer* to recuse from a matter pending before him." (third emphasis added)).[8] Admittedly, as the Commonwealth points out, we have expressed a strong preference for the trial judge to preside over a petitioner's post-conviction proceedings in order to promote judicial efficiency. *See, e.g., Abu–Jamal*, 720 A.2d at 90 ("Generally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice."). However, such a preference does

8. Similarly, we reject the Commonwealth's related argument, based on dicta from various federal cases, that President Judge Eby had an affirmative duty not to recuse himself once he rejected the grounds for recusal alleged by Appellee. *See* Commonwealth's Br. at 24 (citing to *In re Aguinda*, 241 F.3d 194 (2d. Cir.2001); *Martin v. Monumental Life Ins.*, 240 F.3d 223 (3d Cir.2001); *In re Allied–Signal*, 891 F.2d 967 (1st Cir.1989); *Hinman v. Rogers*, 831 F.2d 937 (10th Cir.1987); and *Mass. Sch. of Law at Andover v. Am. Bar Ass'n*, 872 F.Supp. 1346 (E.D.Pa. 1994)). This Court has never recognized such a duty because, as noted above, we believe that our judges should *sua sponte* raise concerns that they believe might warrant their recusal. *See Reilly*, 489 A.2d at 1298 ("[Code of Judicial Conduct] Canon 3 C ... imposes standards of conduct to be referred to by a *judge* in his *self-assessment* of whether he should *volunteer* to recuse from a matter pending before him." (third emphasis added)).

not in any way serve as a blanket prohibition against a trial judge recusing himself from subsequent proceedings. Rather, we have placed the decision on whether to recuse squarely in the hands of the trial judge through Pennsylvania Rule of Criminal Procedure 903(C), which provides: "The trial judge if available, shall proceed with and dispose of the [PCRA] petition in accordance with these rules, *unless the trial judge determines, in the interests of justice, that he or she should be disqualified.*" Pa.R.Crim.P. 903(C) (emphasis added).

Here, in his fourteen-page opinion supporting his decision to recuse himself, President Judge Eby thoughtfully considered all of the grounds for recusal alleged by Appellee and concluded that he was not required to recuse himself on those grounds. However, the President Judge nonetheless decided to recuse himself, in an effort to expedite the disposition of Appellee's PCRA petition. He explained:

> [T]he jury has spoken as to the responsibility of [Appellee] for these crimes and the appropriate penalty to be assessed. The citizens of our community, our Commonwealth, and the litigants are entitled to resolution of this matter. If we were to deny [Appellee]'s motion for recusal, [Appellee] may well pursue review on this issue and there would be greater delay in bringing [Appellee]'s case to resolution.... [W]e will not permit such further delay. Rather, we are going to remove this issue from future debate. Therefore, we will grant [Appellee]'s motion for recusal and request that a jurist from outside of Lebanon County preside over the remainder of [Appellee]'s [p]ost-[c]onviction proceedings.

R.R. at 83a (PCRA Ct. Op. at 14). Based on this reasoning, it is apparent that President Judge Eby determined *sua sponte* that the "interests of justice" required him to recuse himself, *see* Pa.R.Crim.P. 903(C), and given the procedural history of this case, we see no abuse of discretion in such a determination.

Appellee was sentenced to death in 1993 for Goodman's murder. Even after ten years and multiple appeals to this Court, Goodman's family, Appellee, the Commonwealth, and

the citizens of this Commonwealth still await the disposition of Appellee's case. In fact, the record shows that Appellee filed her PCRA petition almost four years ago, and even after two appeals to this Court involving that petition, she still has not had so much as a single hearing on it. Although it is certainly not uncommon for many years to pass before a case, especially a capital case like the instant one, comes to its final resolution, the delay thus far in the disposition of this particular case led President Judge Eby to conclude that the interests of justice required him to prevent further delay in disposing of the case by granting Appellee's motion.

The Commonwealth contends that this reasoning is unsound because, according to the Commonwealth, President Judge Eby's recusal will actually *cause* delay in the disposition of Appellee's PCRA petition. By recusing himself, the Commonwealth argues, the President Judge has created a situation where a new judge—one who did not preside over Appellee's trial—will now have to familiarize himself with the extensive PCRA petition and record here.[9] We find this argument unpersuasive.

Although we recognize that the newly assigned judge will now have to familiarize himself with the PCRA petition and record in the instant case, we find the relative delay caused by such a task *de minimis,* as we expect judges in all PCRA proceedings to read over the petition and the record, regardless of whether they presided over the petitioner's trial or not. Moreover, the record shows that the PCRA court has not yet issued any rulings on Appellee's amended PCRA petition nor, as noted above, held any hearings on that petition. In fact, other than issuing an order summarizing the issues to be

9. The Commonwealth also opines that because Appellee and her co-defendant, Martin, have raised the same issues in their respective PCRA petitions, "[i]t would represent the height of judicial inefficiency for two different judges to preside over PCRA hearings in which many of the same issues are raised based on an identical factual record." Commonwealth's Br. at 22. However, the Commonwealth has not made Martin's PCRA petition a part of the record, and therefore, we have no basis from which to evaluate the Commonwealth's argument. *See, e.g., Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025, 1035 (1996) ("Matters outside the record cannot be considered.")

determined at an evidentiary hearing and the instant recusal order, there is no indication in the record that the PCRA court has performed any substantial work toward the disposition of Appellee's PCRA petition.

Given these circumstances, the Commonwealth has, in our view, failed to establish that President Judge Eby's decision to recuse himself was "manifestly unreasonable" or the "result of partiality, prejudice, bias or ill will," or that President Judge Eby failed to apply the law. *Widmer,* 744 A.2d at 753. As such, we find that President Judge Eby did not abuse his discretion by recusing himself in the instant case, and accordingly, there is no basis for this Court to mandate that the President Judge preside over Appellee's PCRA proceedings.[10]

The order of the PCRA court is affirmed.

Justice NEWMAN files a concurring opinion.

Justice CASTILLE files a dissenting opinion in which Chief Justice CAPPY joins.

Justice SAYLOR dissents.

Justice NEWMAN concurring.

I join the analysis and rationale of the Dissenting Opinion authored by Justice Castille. Indeed, I respectfully disagree with the way the Majority applies the legal standard at issue to the facts of this case, and I also believe that a recusal for improper reasons constitutes an abuse of judicial discretion. Ultimately, however, I do not think that it is appropriate to require President Judge Robert J. Eby to continue presiding in the instant matter.

"Four things belong to a judge: to hear courteously, to answer wisely, to consider soberly and to decide impartially,"[1] and, in my opinion, it is the absence of the last element that

**10.** Given our conclusion that President Judge Eby did not abuse his discretion in recusing himself based on his self-assessment of the case, we need not address the parties' arguments regarding whether President Judge Eby properly refused to recuse himself on the grounds alleged by Appellee.

**1.** Socrates (470–399 B.C.).

compels my decision. It is evident that President Judge Eby recused himself for the sole purpose of expediting the ultimate resolution of this case. Trial Court Opinion, 9/14/2002, p. 14 ("If we were to deny [appellee]'s Motion for Recusal, [Appellee] may well pursue review on this issue and there would be greater delay in bringing [Appellee]'s case to resolution.") Aside from the fact that, as articulated by Justice Castille, this conclusion is based on a specious concern with appellate delay, I believe that it also exhibited a bias towards Appellee sufficient to warrant a recusal in and of itself. Hence, at this point, it would be unfair for President Judge Eby to decide the issues raised by the Appellee and, while I entirely disagree with the reasoning of the Majority, I feel constrained to agree with the result that it reaches.

Justice CASTILLE dissenting.

The PCRA judge in this case, who also presided over appellee's capital murder trial, specifically found that appellee's motion for recusal was meritless, *i.e.,* that appellee had failed to prove the existence, or appearance, of any partiality, bias, prejudice, or unfairness on the part of the PCRA judge that would warrant recusal. Nevertheless, the court inexplicably proceeded to grant the meritless motion, on collateral grounds that a failure to do so might lead appellee "to pursue review" of the ruling and thereby delay the disposition of the PCRA petition. In my view, to grant a recusal request despite its lack of merit, and upon collateral grounds that are inherent in **any** judicial decision, is an abuse of discretion. Indeed, to grant a meritless motion merely in the hope of forestalling an appeal amounts to a total abdication of judicial discretion.

The lead opinion accurately notes that President Judge Eby "thoughtfully considered all of the grounds for recusal alleged by appellee and concluded that he was not required to recuse himself on those grounds." Op. at 325, 839 A.2d at 241. The lead opinion does not dispute the accuracy of President Judge Eby's assessment of the merits. In addition, it is undisputed that there was no other reason independently invoked by

President Judge Eby rendering him incapable of presiding over this PCRA matter fairly and impartially, which would have warranted his recusal *sua sponte.* Thus, in affirming the recusal, the lead opinion essentially holds that motions to recuse may achieve their desired result, despite their lack of merit, merely because the unsuccessful movant might seek interlocutory appellate review of the denial. I cannot accept such a finding and I respectfully dissent.

Any party forwarding any motion may attempt to appeal an adverse decision, thereby causing potential delay. Since the prospect of an appeal and concomitant delay attends virtually every legal ruling made by a trial judge, it is capricious, at best, to grant a meritless motion merely to forestall the disgruntled party's appeal. This case proves the point: the recusal order entered by the PCRA court led the Commonwealth to seek appellate review of the order, and the PCRA court certified that interlocutory appeal, thereby incurring the very delay President Judge Eby sought to prevent. Moreover, it is particularly capricious to invoke a concern with appellate delay as a reason to grant a meritless recusal motion. The denial of a recusal motion is not appealable as of right; thus, delay is not, in fact, inevitable even if the aggrieved party seeks to "pursue review." Rather, delay will occur only if discretionary review is granted by an appellate court and a stay is issued.

The lead opinion properly notes that, although it is well-settled that a judge's **denial** of recusal is subject to review under an "abuse of discretion" standard, *see Commonwealth v. Council,* 491 Pa. 434, 421 A.2d 623 (1980), neither party cites any case in this Commonwealth where an appellate court has reviewed the opposite scenario—*i.e.,* a judge's allegedly erroneous **grant** of recusal. However, both the parties and the lead opinion appear to accept the proposition that an abuse of discretion standard ought to apply when a judge grants recusal. "Judicial discretion" has been defined as, "the exercise of judgment by a judge ... based on what is fair under the circumstances and **guided by the principles of law.**" *Black's Law Dictionary* 479 (7th Ed. 1999) (emphasis added). As the

lead opinion notes, "the term 'discretion' imports the exercise of judgment, wisdom, and skill so as to reach a dispassionate conclusion, **within the framework of the law.** Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions." Op. at 323, 839 A.2d at 240 (citing *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 753 (2000)) (quoting *Coker v. S.M. Flickinger Co.,* 533 Pa. 441, 625 A.2d 1181, 1185 (1993)) (emphasis mine).

In the recusal arena, that framework of law is concerned with situations where the judge's impartiality might reasonably be questioned. *See* Code of Judicial Conduct Canon 3(C)(1); *Commonwealth v. Tharp,* 830 A.2d 519, 534 (Pa.2003) (quoting *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 89 (1998)). Where a jurist upon "conscientious determination" has decided that his impartiality cannot reasonably be so questioned, the fact that an aggrieved or disgruntled party may disagree and seek to appeal that ruling cannot operate to imbue the meritless motion with a validity it lacked under the framework of the law governing recusal.

I have no quarrel with deeming decisions granting recusal to be subject to an abuse of discretion standard. But, in analyzing that discretionary decision, I would be careful to distinguish between grants of recusal which are based upon the judge's assessment of his ability to preside impartially (or the appearance of that prospect) and decisions—such as that at issue here—where the recusal was based upon some potential collateral consequence having nothing whatsoever to do with the jurist's assessment of his impartiality. Review of a recusal based upon the judge's determination that he is unable to preside fairly and impartially over a matter, or that appearances are such that his impartiality may fairly be questioned, properly is deferential, since the jurist at issue is in the best position to assess the effect of the alleged disqualifying factor(s). Indeed, in many instances, recusal properly occurs *sua sponte* for personal reasons which remain known only to the jurist.

On the other hand where, as here, a party's recusal request is granted for reasons having nothing to do with the jurist's alleged partiality, but instead for reasons deriving from a generic concern such as the appellate delay that may result if the aggrieved party appeals, there is no reason to defer to the self-disqualifying jurist's determination at all. As has been noted above, appellate delay is a possibility **anytime** the trial court rules upon a contested issue because such rulings always leave one party aggrieved. If that generic prospect properly warrants recusal in one case, it necessarily warrants recusal in all cases. Since the generic concern with appellate delay is ever-present, the question of whether and when the prospect of avoiding the delay justifies granting a meritless recusal motion should not vary from case to case or judge to judge. It is a question which should be definitively answered by this Court, and its answer should apply equally in all similar cases. Therefore, I would hold as a matter of law that the ever-present prospect that the losing party may seek an interlocutory appeal is not a proper ground upon which to grant a meritless motion for recusal.

The lead opinion ultimately cites to the "interests of justice" standard in Pa.R.Crim.P. 903(C) as justifying the PCRA judge's recusal decision. But, the only "interest of justice" cited by the PCRA judge was the prospect of appellate delay, a prospect which inheres in every contested decision. The interests of justice are not served by converting the party which should lose a motion on the merits into the prevailing party, merely in an attempt to appease that party and prevent it from seeking appellate review.[1] Accordingly, I dissent.

Chief Justice CAPPY joins this dissenting opinion.

---

1. It is notable in this regard that appellee candidly does not attempt to defend the recusal decision on the grounds cited by the PCRA court or the lead opinion, but instead renews her merits-based recusal argument. I would reject that argument on the basis of the opinion below.