J-S12015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIGUEL ALEJANDRO BADELL | : | |
| | : | |
| Appellant | : | No. 1984 EDA 2019 |

Appeal from the PCRA Order Entered June 12, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0003115-2015

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 19, 2020**

Appellant, Miguel Alejandro Badell, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the procedural history of this case as follows:

> On or about August 15, 2016, [Appellant] entered [an open] guilty plea to aggravated assault.[1]  A pre-sentence investigation (PSI) [report] was prepared for sentencing and on October 6, 2016, [Appellant] received the maximum sentence of 10 to 20 years imprisonment.  [Appellant] pursued a direct appeal and the Superior Court affirmed the sentence on December 12, 2017.[[1]] [Appellant] sought Post-Conviction Relief, hereafter PCRA, with a supporting memorandum on October 16, 2018.  A PCRA hearing

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***Commonwealth v. Badell***, 179 A.3d 620, 3522 EDA 2016 (Pa. Super. filed October 31, 2017).

was held on January 25 and January 31, 2019. The Commonwealth responded with a brief on April 3, 2019. [Appellant] submitted [his] final brief on or about April 25, 2019.

_____

[1] 18 Pa.C.S.A. [§] 2702(a)(1).

PCRA Court Opinion, 6/12/19, at 1. The PCRA court denied the petition on June 12, 2019, and Appellant filed a timely appeal on July 10, 2019. The PCRA court did not direct the filing of a Pa.R.A.P. 1925(b) statement.

Appellant presents the following issues for our review:

1. Whether Appellant is entitled to a new sentencing hearing where trial counsel failed to motion the [c]ourt for recusal.

2. Whether Appellant is entitled to re-instatement of his appellate rights nunc pro tunc where trial counsel's post-sentence motions were insufficient to preserve his challenge to the discretionary aspects of sentencing.

3. Whether Appellant is entitled to an arrest of judgment where trial counsel's erroneous advice induced his plea.

Appellant's Brief at 4.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (*quoting Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). A PCRA court's credibility findings are to be accorded great deference. *Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011)

(citation omitted). "Where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court." *Id*. (citation omitted).

In order to plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these prongs. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). "We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (*citing Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998)).

In his first issue, Appellant argues that he is entitled to a new sentencing hearing because trial counsel was ineffective for failing to motion for recusal of the sentencing judge. Appellant's Brief at 7. Appellant maintains that the

sentencing judge's conduct on the record during the sentencing proceeding created an appearance of impropriety that required recusal. *Id.* More specifically, Appellant asserts, "The sentencing court made several remarks during the guilty plea and at sentencing that showed a bias against and ill-will toward Appellant and all other defendants charged with domestic violence related crimes." *Id.* at 8. In support of his claim, Appellant identified four specific statements with which he took issue. *Id.* at 9-10. Appellant focuses on the following statements made by the sentencing court:

> "I've been on the bench now for 13 years. I've been sitting with this domestic violence caseload for a good three or four. It disgusts me. I hate it." N.T. 10/16/16 page 64, lines 9-11.

> Second, the sentencing court expressed its pre-disposition to favor the prosecution and further express its dislike for cases involving and defendants charged with crimes of domestic violence:

> "I guess it's only fair to tell you that I did Ms. Tharp's job before she did it. It was an ugly job. I hated it. I hated it. Id. page 64 lines 1-4."

> Third, the sentencing court expressed a pre-disposition for sympathy for victims of domestic violence and a tendency to find their testimony credible when it said:

> "I wish, quite frankly, that I was the person that you believe I might be who is sort of numb to this because of hearing it. I don't think you ever become numb to something like this because it's so horrifying.

> It's offensive. It doesn't make any sense. It is the story of domestic violence in that you wonder how you can treat somebody that you say you love like that.

I think that your words are ingrained in my head not only for you, but I'm sure you know the number of victims who come here who can't even begin to speak." Id. page 44, lines 4-24.

Finally, the sentencing court expressed personal animosity towards the Appellant by bestowing all the negative connotations of domestic violence and society's ills upon him without giving consideration to his unique personal and social history. The sentencing court opined:

"And, sadly, there are many more out there like you. So you are not an anomaly to me. You are not some rare species that I'm first laying eyes on. Could that be? Could somebody be that evil? We know for a fact that the most successful domestic violence offenders are the most charming. They've got the most going on.

That's why everyone ignores what maybe should have been a bit more obvious, because he is such a great guy and you know what, she is a great woman, and, obviously, there must be something there because she is no fool, she is not going to be with somebody who is something other than great.

Those are the successful domestic violence offenders. They have got everyone fooled. But you don't have me fooled. And you don't have Ms. Brown fooled. And you don't have Ms. Tharp fooled. Id. page 63, lines 9-25.

Appellant's Brief at 9-10.

We have stated the following with regard to the recusal of a judge:

At the outset, we recognize that "our judges are honorable, fair and competent." *Commonwealth v. King*, 576 Pa. 318, 839 A.2d 237, 239 (2003). "It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Abu-Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998).

***Commonwealth v. McCullough***, 201 A.3d 221, 244 (Pa. Super. 2018).

We first address the third statement identified by Appellant above, made by the sentencing court with regard to sympathy for victims. The sentencing court made this statement directly to the victim in response to the victim's lengthy statement, consisting of thirty-six pages in the transcript, detailing the significant abuse she suffered at Appellant's hands. N.T., 10/16/16, at 7-43. Following the victim's statement, this exchange occurred:

> THE COURT: I don't really know what to say to you. What you described in your statement is nothing short of a living nightmare and I cannot imagine surviving it. I don't know how one survives that. And it takes a remarkably strong person to continue to move forward. And my hat is off to you because you are that incredibly strong person.
>
> THE WITNESS: Thank you.
>
> THE COURT: I wish, quite frankly, that I was the person that you believe I might be who is sort of numb to this because of hearing it. I don't think you ever become numb to something like this because it's so horrifying.
>
> It's offensive. It doesn't make any sense. It is the story of domestic violence in that you wonder how you can treat somebody that you say you love like that.
>
> I think that your words are ingrained in my head not only for you, but I'm sure you know the number of victims who come here who can't even begin to speak.
>
> THE WITNESS: I couldn't have a year ago.
>
> THE COURT: They don't know what to say. They don't think anyone will believe them. They are afraid to speak. It's too painful. And so I'm going to keep those things in mind for the women who really just have to stand there and when Ms. Tharp says is there anything you'd like to say they are not even able to

move their lips.  So I appreciate the effort that you have put into your statement.

THE WITNESS:  Thank you.

N.T., 10/16/16, at 44-45.

Thus, as reflected by the record, this statement by the trial judge acknowledged the Victim's testimony and showed the court's appreciation for the victim's willingness to put forth publicly the abuse the victim suffered.  It "shows only that the judge had a grasp of human nature, not that [she] was biased" against Appellant.  ***See Commonwealth v. Flor***, 998 A.2d 606, 642 (Pa. Super. 2010) (regarding a victim impact statement, the Supreme Court held that the judge's statement that he would have understood a call for vengeance by the murdered officer's brother does not suggest or imply that the court was in any sense motivated by vengeance or bias.).  Thus, this statement does not establish that the trial judge was biased or had ill-will toward Appellant.  Accordingly, we cannot agree that this statement serves as a basis for requesting the sentencing court judge's recusal.  Thus, there is no merit to the underlying claim.

With regard to the remaining three statements identified by Appellant as allegedly showing bias, we observe that these statements were made by the trial court in the context of imposing Appellant's sentence.  While lengthy, the following statement made by the trial judge to Appellant regarding his sentence puts these statements in context.  The trial court stated, in relevant part, as follows:

[Appellant], let me just address you for a moment. You are right. We are not here to try the case. We are not here to contest what has gone before. But let me make it perfectly clear to you that I believe every word that [the Victim] has shared with us today.

I don't believe she has any other motive at this point other than to get that ugly story off her chest once and for all and . . . expose the whole situation for the whole world to see.

Because the only thing really that she missed in her recitation to me was what I learned from another victim which was, notwithstanding her appearance today, her demeanor, her composure, being a victim of domestic violence is nothing short of humiliating.

It's humiliating to have to go to the police. It's humiliating to be here in court. It's humiliating to be exposed to your friends and your family and your children that you are not the person that they thought they knew or that the relationship isn't the one that everybody is envious of. It is humiliating.

And she could have just as easily told me how upsetting this was and how upsetting to her children and what a nightmare it was and sat down. She exposed this to expose you. And I believe every word of it.

I find your behavior to be disgusting. No person has the right to control a person to the extent that you attempted to control her. No one should ever have their hands on someone in anger. And, certainly, not somebody that they profess to love.

You created an environment in the home of distrust. The girls couldn't believe anything their mother said. And that's a horrible, horrible situation. Because even though, if [daughter] is any indication of her sister, they are smart, they are sophisticated, when all is said and done, everyone needs their mother.

Everyone needs to be able to rely on their mother, to depend on their mother for their mother's help and guidance and good judgment. And they couldn't rely on that with her because they had this sense that she was lying to them. And they couldn't even figure out why.

And kids take everything personally. What have we done that [our] mother can't be truthful with us? Why does she think we are so stupid? So you stole that from them. You stole their trust or admiration for their mother. You made that woman's life an absolute living Hell on earth.

**And, sadly, there are many more out there like you. So you are not an anomaly to me. You are not some rare species that I'm first laying eyes on. Could that be? Could somebody be that evil? We know for a fact that the most successful domestic violence offenders are the most charming. They've got the most going on.**

**That's why everybody ignores what maybe should have been a bit more obvious, because he is such a great guy and you know what, she is a great woman, and, obviously, there must be something there because she is no fool, she is not going to be with somebody who is something other than great.**

**Those are the successful domestic violence offenders. They have got everyone fooled. But you don't have me fooled. And you don't have Ms. Brown fooled. And you don't have Ms. Tharp fooled.**

You are a dangerous, dangerous individual. **I guess it's only fair to tell you that I did Ms. Tharp's job before she did it. It was an ugly job. I hated it. I hated it.**

And I have to confess that there were as many times as not where I allowed myself to think, oh, she probably deserved it, what a shrew, who could put up with that.

**I've been on the bench now for 13 years. I've been sitting with this domestic violence caseload for a good three or four. It disgusts me. I hate it.** In the time that I've been on the bench, I think that I've come to the conclusion that -- and I've said it in court and I have said it out in the community – we warehouse people, too many people, for too many years for no good end and that has to stop.

There are, what, 55 million people incarcerated. But there's a category of person who deserves to be warehoused. And that's

a person who willfully and repeatedly hurts another person, hurts them physically, hurts them emotionally, hurts them spiritually.

And they deserve to be warehoused because they don't care and they don't learn and they are not dissuaded by anything that's gone before. This is, what, the fifth act of domestic violence for which you are being prosecuted, the fourth?

[Appellant]: Third, Your Honor.

THE COURT: You don't get it. You don't get it. And I think there's a certain arrogance. You know, you think you are smarter than everyone else, that you are going to get away with it, that nobody is going to believe that. Who is going to believe that? Who would believe that?

I believe it because I have seen it. And I can't tolerate it and I can't stand it and it makes me sick. You are a person who needs to be put away for as long as possible.

I'm sorry for your family. I'm sorry for your children. Yours is a wasted, wasted, wasted, life.

And so without further ado, because this has gone on too long, in 3115 of 2015 , the sentence is that you pay the costs of prosecution. Is there a request for restitution, Ms. Tharp?

MS. THARP: No, Your Honor.

THE COURT: That you undergo imprisonment in the state correctional institution for a period of not less than 10 nor more than 20 years, that you be credited for all time spent in custody as a result of these charges, stand committed until the sentence is complied with. You are not RRRI eligible.

Conditions of supervision are that you abide by any and all conditions imposed by the state parole board, including any special conditions related to crimes of domestic violence, and that you are to have no contact either direct or indirect with the victim, . . . , or any members of her immediate family.

This sentence departs from the guidelines. It is in excess of the aggravated range. It is, in fact, the maximum possible penalty

that I can impose in this matter. And I do so because you are a repeat violent domestic violence offender.

You have violated previous court orders that have been intended to control your behavior. You have caused what may be irreparable harm to the victim and to her family. And this has been a course of conduct that has, in my mind, been intended to terrorize and to tear down another human being. . . .

N.T., 10/6/16, at 61-66 (emphases added to reflect Appellant's challenged statements).

As reflected, these comments were made while addressing Appellant and explaining the reasons for his sentence. The trial court made these statements in the context of considering Appellant's background, history, rehabilitative needs, and the need to protect the public, as it is required to do.[2]

Moreover, we have explained:

Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, **judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge**. They may do so if they

---

[2] A sentencing court must formulate a sentence individualized to that particular case and that particular defendant. *Commonwealth v. Boyer*, 856 A.2d 149, 153 (Pa. Super. 2004). Section 9721(b) provides: "The court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense, as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant ..." *Boyer*, 856 A.2d at 153 (citing 42 Pa.C.S. § 9721(b)).

> reveal an opinion that derives from **an extrajudicial source**; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... **Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger**, that are within the bounds of what imperfect men and women, even after having been confirmed as judges, sometimes display. **A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune**.

*Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (emphases in original) (*citing* ***Commonwealth v. Druce,*** 848 A.2d 104, 110 n.3 (Pa. 2004)) (The Court explained that "[u]nder the extra-judicial source doctrine, alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal.") (*quoting* ***Liteky v. United States***, 114 S.Ct. 1147 (1994)). Furthermore, our Supreme Court has stated: "[I]t is not improper for a judge to address a defendant after sentencing for the purpose of reiterating to the defendant that the punishment just imposed was well-deserved." ***Flor***, 998 A.2d at 642.

Accordingly, we cannot agree that the trial court's statements were grounds for recusal. Because these underlying claims lack merit, Appellant cannot succeed on his claim of ineffective assistance of trial counsel for failure to seek recusal of the trial court judge. ***Stewart***, 84 A.3d at 706.

Moreover, we note that a panel of this Court on direct appeal addressed Appellant's assertion that he was entitled to a new sentencing hearing because the trial court imposed a maximum sentence in excess of the aggravated range sentence. ***Commonwealth v. Badell***, 179 A.3d 620, 3522 EDA 2016

- 12 -

(Pa. Super. filed October 31, 2017). This Court determined that Appellant's issue was meritless and reasoned:

Here, our review of the sentencing transcript reveals the trial court considered the guideline ranges for [Appellant's] crime, but concluded the facts and circumstances underlying his conviction called for a sentence above the aggravated range of the guidelines. After imposing the 10 to 20-year sentence, the trial court explained:

This sentence departs from the guidelines. It is in excess of the aggravated range. It is, in fact, the maximum possible penalty that I can impose in this matter. And I do so because you are a repeat violent domestic violence offender.

You have violated previous court orders that have been intended to control your behavior. You have caused what may be irreparable harm to the victim and to her family.

And this has been a course of conduct that has, in my mind, been intended to terrorize and to tear down another human being.

In its opinion, the court further elaborated that the "guilty plea narrative and the testimony taken at the sentencing hearing demonstrated the victim was psychologically, physically, and sexually abused by [Appellant] during the course of their relationship." Indeed, [Appellant's victim] delivered a powerful victim impact statement that spanned 36 pages in the transcript, and detailed her four-year relationship with [Appellant], during which time he repeatedly physically and psychologically abused her. Further, the trial court emphasized that [Appellant] had been convicted of domestic violence–related crimes on two prior occasions in California, and "served significant periods of incarceration for those crimes."

We find the trial court's comments both at the sentencing hearing and in its opinion . . . demonstrate that the court considered the factors listed in Sections 9721(b) and 9781(b) before imposing a sentence above the aggravated range of the guidelines. Indeed, the court's focus on [Appellant's] history of

- 13 -

domestic abuse and his failure to conform his behavior after two prior convictions, establishes its consideration of the protection of the public and [Appellant's] rehabilitative needs. **See** 42 Pa.C.S. § 9721(b); 9781(d)(1). Likewise, the court's emphasis on the psychological and physical harm [Appellant] inflicted on the victim over a sustained period of time evidences its consideration of the gravity of the offense as it relates to the impact on the life of the victim. **See id.** Furthermore, we emphasize that prior to the hearing, the trial court reviewed a presentence investigation report, which [Appellant's] counsel believed was "done very fairly for [Appellant]," as well as "a packet of letters" supporting [Appellant], and a "lengthy letter with some attachments" that [Appellant] submitted himself. Moreover, [Appellant] spoke at the sentencing hearing, and the court was able to hear his apology to the victim and her family. Accordingly, [Appellant's] . . . sentencing claim warrants no relief.

**Badell**, 179 A.3d 620, 3522 EDA 2016, at *7-8 (some internal citations and footnote omitted).

Thus, this Court previously determined that Appellant's sentence was not improper and that the trial court properly considered relevant factors in sentencing Appellant. This Court stated that the trial court's statements at sentencing reflected the reasons for imposition of the sentence above the aggravated range of the guidelines, including Appellant's history of domestic abuse and the harm he caused. Accordingly, Appellant's argument that the trial court was biased and such bias resulted in an excessive sentence is meritless. Because counsel cannot be deemed ineffective for failing to raise a meritless issue, Appellant's claim of trial counsel's ineffectiveness on this basis fails. **See Commonwealth v. Spotz**, 47 A.3d 63, 122 (Pa. 2012) (Where an underlying claim is meritless, "the derivative claim of ineffective assistance of counsel for failing to object has no arguable merit.").

In his next issue, Appellant argues that he is entitled to re-instatement of his appellate rights *nunc pro tunc* because trial counsel's post-sentence motions were insufficient to preserve a challenge to the discretionary aspects of sentencing. Appellant's Brief at 24. Specifically, Appellant argues that trial counsel filed deficient post-sentence motions causing Appellant's challenge to the discretionary aspects of sentencing to be waived on direct appeal. ***Id.*** Appellant asserts that as a consequence, counsel was ineffective and Appellant suffered prejudice. ***Id.*** With regard to the alleged prejudice Appellant suffered, he states: "Appellant was prejudiced because his sentence was greater than that called for by the sentencing guidelines and even the aggravated sentence recommended by the pre-sentence investigation." ***Id.*** at 25.

As stated above, Appellant's challenge to his sentence on the basis that it was too harsh and excessive was previously litigated by this Court on direct appeal. A panel of this Court determined that it was not overly harsh or excessive, and that the reasons for the sentence imposed beyond the aggravated range for sentencing were placed on the record by the sentencing court. ***Badell***, 179 A.3d 620, 3522 EDA 2016. Thus, Appellant's assertion that he was prejudiced because his sentence was greater than the aggravated range is meritless. Accordingly, because counsel cannot be deemed

ineffective for failing to raise a meritless claim, Appellant's assertion fails.[3]

***Spotz***, 47 A.3d at 122.

In his final claim, Appellant argues that he is entitled to an arrest of judgment where trial counsel's erroneous advice induced his plea. Appellant's Brief at 26. Appellant contends that he presented testimony at the PCRA hearing, as did his wife, that Appellant was told by counsel that he would receive a sentence of five to ten years imprisonment despite the on-the-record-colloquy given by the trial court. ***Id.*** at 27. Appellant maintains that "[t]his uncontroverted evidence proves erroneous advice from trial counsel." ***Id.*** Appellant further asserts that he opted to forego trial and enter an open plea "based upon the erroneous advice of trial counsel." ***Id.*** at 27-28. Appellant argues that he was prejudiced because but for trial counsel's erroneous advice, Appellant would not have pled guilty but instead, would have proceeded to trial. ***Id.*** at 28.

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." ***Commonwealth v. Hickman***, 799 A.2d 136,

_____

[3] In the argument section of his brief on this issue, Appellant again attempts to base his claim on counsel's failure to seek the trial judge's recusal on the basis of bias. Specifically, Appellant asserts that "trial counsel's deficient performance waived Appellant's challenge to his sentence based upon the sentencing court's bias." Appellant's Brief at 25. As outlined above, we determined that there was no basis for seeking the trial judge's recusal; thus, any claim of ineffectiveness of counsel for failing to do so lacks merit. For the same reason, we cannot agree that counsel was ineffective for failing to file a post-sentence motion in order to challenge the trial court's alleged bias.

141 (Pa. Super. 2002). "The law does not require that [an] appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa. Super. 2006) (citation omitted). Instead, "the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa. Super. 2005). "The voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Lynch*, 820 A.2d 728, 733 (Pa. Super. 2003). Therefore, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." *Commonwealth v. Boyd*, 835 A.2d 812, 815 (Pa. Super. 2003). If the ineffective assistance of counsel caused the defendant to enter an involuntary or unknowing plea, the PCRA will afford the defendant relief. *Hickman*, 799 A.2d at 141.

In order to ensure a voluntary, knowing, and intelligent plea, trial courts are required to ask the following questions in the guilty plea colloquy:

1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or nolo contendere?

2) Is there a factual basis for the plea?

3) Does the defendant understand that he or she has the right to a trial by jury?

4) Does the defendant understand that he or she is presumed innocent until found guilty?

5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590; ***Commonwealth v. Pollard,*** 832 A.2d 517, 522–523 (Pa.

Super. 2003). "The guilty plea colloquy must affirmatively demonstrate that

the defendant understood what the plea connoted and its consequences."

***Commonwealth v. Lewis***, 708 A.2d 497, 501 (Pa. Super. 1998). "Once a

defendant has entered a plea of guilty, it is presumed that he was aware of

what he was doing, and the burden of proving involuntariness is upon him."

***Commonwealth v. Stork***, 737 A.2d 789, 790 (Pa. Super. 1999) (citation and

internal brackets omitted). "In determining whether a guilty plea was entered

knowingly and voluntarily, ... a court 'is free to consider the totality of the

circumstances surrounding the plea.'" ***Commonwealth v. Flanagan***, 854

A.2d 489, 513 (Pa. 2004) (citation and internal quotation marks omitted).

Finally, when addressing an appellate challenge to the validity of a guilty

plea, we apply the following:

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not

later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

* * *

[A] defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

Here, the record belies Appellant's assertion that his plea was entered involuntarily. First, Appellant executed a written plea agreement which advised him of all criteria outlined under Pa.R.Crim.P. 590 and indicated that Appellant entered the plea knowingly and voluntarily. Appellant completed the lengthy written guilty plea colloquy by answering each question and initialing every page. Guilty Plea Statement, 8/15/16, at 1-10; N.T., 8/15/16, at 18. Second, the trial court conducted a lengthy oral guilty plea colloquy with Appellant that covered the requirements set forth in Pa.R.Crim.P. 590. N.T., 8/15/16, at 1-30. The trial court advised Appellant that he was entering an open plea to aggravated assault and as to the potential sentences. *Id.* at 8-13, 19. The trial court explicitly advised Appellant that it could sentence Appellant to the maximum of ten to twenty years imprisonment:

And then, again, I can sentence you to the maximum. I can sentence you to 10 to 20 years if I feel that's what is appropriate for the case. And then I have to give some additional explanations on the record in order to survive review by a higher court.

- 19 -

*Id.* at 13. Appellant stated that he was satisfied with counsel's representation. *Id.* at 21. Appellant also stated that no one made a promise to him regarding the trial court's sentence. *Id.* at 21-22. After the oral colloquy, the trial court, satisfied that Appellant's plea was being entered voluntarily, knowingly and intelligently, accepted Appellant's guilty plea. *Id.* at 28.

Futhermore, the PCRA court summarized the testimony provided at the PCRA hearing by Appellant, his wife, and trial counsel, as follows:

> Trial counsel, Attorney Steven Mills, testified that he has been an attorney practicing criminal law since 2006. Attorney Mills handles approximately hundreds of criminal cases per year. Attorney Mills represented [Appellant] from the start of the preliminary hearing, through plea proceedings, sentencing, and post-sentence motions. After [Appellant] received the statutory maximum sentence, Attorney Mills filed a post-sentence motion for reconsideration. Attorney Mills testified that his strategy in filing for reconsideration was an attempt to get [Appellant] a lower sentence.
>
> Attorney Mills explained that he had thoroughly discussed the evidence in the case, the text messages, the cell phone records, and the Commonwealth's offer to one count of aggravated assault. When asked if he attempted to obtain a negotiated plea, Attorney Mills responded "*It was hard to obtain any plea in this case, to be honest with you. The most we ever got was an open to the agg[ravated] assault charge.*" Attorney Mills informed his client that he faced a very real potential of conviction on multiple charges, with a prior record score of five (5), and [Appellant] was aware he faced a potential sentence on each conviction.
>
> Mills testified that he spoke to [Appellant] about the plea offer on multiple occasions. He explained that the guidelines for a single count of aggravated assault, based on [Appellant's] record, was 5 to 6 years. When the pre-sentence investigation report (PSI) was obtained, Attorney Mills reviewed it with [Appellant] and informed [Appellant] that the PSI recommended 7 years. Attorney Mills further explained that the recommendation

- 20 -

was in the aggravated range, he believed that [Appellant] understood that, and that they expected the recommendation based on the facts of the case. Attorney Mills informed [Appellant] that he would ask the [c]ourt for a minimum sentence of 5 years (the bottom of the standard range).

To the contrary, [Appellant] took the stand at the PCRA hearing and testified that, at the time of his guilty plea, Attorney Mills informed him he was going to get 5 to 10 years plus or minus 12 months. Lisa German, [Appellant's] girlfriend at the time of sentencing, testified that Attorney Mills informed her that "although he was not allowed to quote time frames, so don't hold me to this, he was confident in the fact that [Appellant] would get 3 to 6 years." [Appellant] further alleged that he was misled as to the nature of his charges. [Appellant] testified that he believed he was pleading guilty to a charge of aggravated assault with the intent to cause serious bodily injury rather than aggravated assault with serious bodily injury.

The Commonwealth reviewed the record with [Appellant] on cross-examination. The record revealed that the Court had informed [Appellant] of the nature of the offense to which he was pleading guilty, the definition and degree of the offense, and the maximum possible penalty. The Court conducted an oral colloquy and a written guilty plea colloquy was filed. Based on a review of the record, [Appellant] acknowledged that the [c]ourt did not promise that he was only getting 5 to 10 years. The [c]ourt had reviewed the guidelines of the offense with [Appellant] and properly informed [Appellant] he could receive the statutory maximum sentence of 10 to 20 years. In fact, [Appellant] was specifically warned that the maximum sentence was an explicit possibility if the [c]ourt determined such a sentence was warranted.

PCRA Court Opinion, 6/12/19, at 6-8 (footnotes omitted).

Thus, the evidence of record supports the conclusion that counsel did not advise Appellant that he would receive a certain sentence. Instead, the evidence reflects that counsel advised Appellant as to the possible sentences as the matter progressed, including the recommendation in the PSI report.

Furthermore, prior to entering the open plea to one count of aggravated assault, the trial court made Appellant aware of the potential sentences, including the possibility of imposing the maximum statutory sentence.

Accordingly, the evidence of record supports the conclusion that Appellant's plea was entered knowingly and voluntarily. Appellant stated under oath that he understood the potential sentences and that no one had promised him a certain sentence. Appellant cannot now assert that he was lying under oath in order to support his claim that his plea was involuntarily entered. *Yeomans*, 24 A.3d at 1047. Appellant's displeasure with his sentence is not a basis upon which he can credibly claim that his plea was involuntarily entered. *See Diaz*, 913 A.2d at 873 ("The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]") (internal citation omitted). The record reflects that Appellant knowingly and voluntarily entered his plea, and Appellant has failed to establish otherwise. Thus, the underlying claim lacks arguable merit. Accordingly, Appellant has failed to establish a claim of ineffective assistance of counsel on this basis and Appellant is therefore entitled to no relief. *Spotz*, 47 A.3d at 127.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/19/2020