J-S23029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY SAXON | : | |
| | : | |
| Appellant | : | No. 3008 EDA 2022 |

Appeal from the PCRA Order Entered October 7, 2022,
in the Court of Common Pleas of Chester County,
Criminal Division at No(s): CP-15-CR-0000616-2018.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY BRYANT SAXON | : | |
| | : | |
| Appellant | : | No. 3009 EDA 2022 |

Appeal from the PCRA Order Entered October 7, 2022,
in the Court of Common Pleas of Chester County,
Criminal Division at No(s): CP-15-CR-0002448-2018.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 25, 2023**

Rodney Saxon appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

Saxon was charged with various crimes at two separate docket numbers as a result of the death of a man and a woman from drug overdoses. On July 17, 2019, as part of proposed guilty plea presented to the Honorable Phyllis R. Streitel for approval, Saxon admitted to the following facts as presented by the Commonwealth in No. 616-2018:

> [THE COMMONWEALTH]: On September 30th of 2017, [the male decedent] did travel to the 500 block of Haws Avenue in Norristown, Montgomery County, Pennsylvania, to purchase heroin/fentanyl from [Saxon]. [Saxon] did sell to [the male decedent] the heroin/fentanyl that [the male decedent] then took back to his home in Malvern, Chester County, Pennsylvania. [The male decedent] did ingest the substances purchased from [Saxon] causing his death shortly thereafter.
>
> Toxicology reports indicate that [the male decedent] had 6.6 nanograms per milliliter of fentanyl in his system, and 1.3 nanograms per milliliter of norfentanyl in his system. The Coroner of Chester County determined that the levels of fentanyl and norfentanyl in [the male decedent's] system [were] lethal, and identified the cause of death of overdose of fentanyl and norfentanyl.

N.T., 7/17/19, at 3-4.

With regard to No. 2448-2018, as part of his guilty plea, Saxon admitted to the following facts as presented by the Commonwealth:

> [THE COMMONWEALTH]: In case number 2448 of 2018, the facts for the plea are as follows: On July 9th of 2017, at approximately, 10:30 a.m. at 260 Leopard Road in Easttown Township, Chester County, Pennsylvania, [Saxon] did deliver to [the female decedent], heroin/fentanyl in the exchange for U.S. currency.
>
> On July 10th of 2017, at approximately, 7:10 a.m., [the female decedent] was found dead of an overdose from ingesting the items purchased from [Saxon] the day before.

> Toxicology reports indicate that [the female decedent] had 3.1 nanograms per milliliter of fentanyl in her system and .69 nanograms per milliliter of norfentanyl in her system.
>
> ***
>
> The Coroner of Chester County determined that the levels of fentanyl and norfentanyl in her system [were] lethal and identified the cause of death as an overdose of fentanyl and norfentanyl[.]

N.T., 7/17/19, at 5-6. Upon hearing these facts, Saxon agreed that he made the deliveries and that both of the deliveries caused the decedents' deaths.

Judge Streitel accepted Saxon's guilty plea and proceeded immediately to sentencing. She heard from four members of the female decedent's family that expressed outrage that Saxon would only be serving a minimum of seven years of incarceration for both cases. When Judge Streitel asked the Commonwealth why the plea agreements had the sentences for both cases running concurrently, the Commonwealth explained that there were viable trial issues involving the female decedent's case. Further, at the time of the pleas, the parties erroneously believed that Saxon was RRRI eligible, which would reduce his minimum sentence to five years and ten months.

Judge Streitel informed the parties that she was reluctant to accept a guilty plea for anything less than a minimum of seven years. Thus, defense counsel was given a two-week continuance to determine if Saxon would be willing to accept such a sentence; otherwise, the case would be listed for trial.

The parties were unable to reach an agreeable resolution to the cases. On November 21, 2019, Saxon appeared before Judge Streitel to waive his

- 3 -

right to a jury trial. At the conclusion of a lengthy colloquy regarding his desire to waive a jury trial, the following exchange occurred:

THE COURT: . . . So, [Saxon], you've heard everything that I've said today, and what the others have said. Is it still your decision today to waive having a jury trial and have your trial heard by me in a bench trial form?

[SAXON]: Yes, your Honor.

\*\*\*

THE COURT: I find that you are making a knowing, intelligent and voluntary decision in this regard. I am signing this waiver myself right now.

N.T., 11/21/19, at 19-20.

Saxon's non-jury trial began on December 2, 2019, and ended two days later. On December 6, 2019, Judge Streitel found Saxon guilty of drug delivery resulting in death, criminal use of a communication facility, involuntary manslaughter, three counts of possession with intent to deliver, and aggravated assault, at the No. 616-2018 case involving the male decedent. At to the No. 2448-2018 case involving the female decedent, Judge Streitel found Saxon guilty of possession with intent to deliver, possession of a controlled substance, and criminal use of a communication facility. She found Saxon not guilty of drug delivery resulting in death, and involuntary manslaughter at this docket.

On March 3, 2020, Judge Streitel sentenced Saxon, at both dockets, to an aggregate term of nine to twenty-five years of imprisonment. Following Saxon's request for appointed counsel, the county public defender's office filed

post-sentence motions that were denied on July 14, 2020. Although Saxon filed timely notices of appeal at each docket, he later filed a praecipe to discontinue them.

On September 29, 2021, Saxon filed a timely, counseled PCRA petition. The PCRA court held an evidentiary hearing on April 18, 2022, at which Saxon and trial counsel testified. By order entered October 7, 2022, the PCRA court denied Saxon's petition. Saxon filed these timely appeals, which we consolidated. The PCRA court did not require Pennsylvania Rule of Appellate Procedure 1925 compliance.

In his appeal, Saxon asserts that trial counsel was ineffective for failing to request Judge Streitel's recusal once he decided to proceed to a non-jury trial, and that trial counsel was ineffective when cross-examining a Commonwealth witness. *See* Saxon's Brief at 2.

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

In both of his issues, Saxon asserts the ineffectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

- 5 -

*Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

In his first issue, Saxon asserts that trial counsel had no reasonable or strategic basis for failing to request Judge Streitel's recusal once he decided to proceed to a non-jury trial. He claims that he had a right to be tried before an impartial judge, and he did not waive his right to be tried before another judge who had not heard his guilty plea. According to Saxon, the fact that he could proceed before a different judge for a non-jury trial was not discussed at his waiver hearing.

Saxon further argues:

> It should be noted that . . . [Saxon] in the instant case did not "withdraw" his plea. He did not admit guilt and then recant. [Saxon] stood fast on his guilt at the guilty plea hearing and the court accepted his pleas as intentionally, voluntarily and knowingly given. It was the court who rejected the plea

- 6 -

agreements based on the length of the sentence[.] [Saxon] asserts that his admissions are more prejudicial than a defendant who vacillates on his guilt and withdraws his plea.

Further, this was not a situation where a judge heard pretrial matters and then presided over a jury trial. Here, Judge Streitel heard [Saxon] declare his guilt without wavering. Then, Judge Streitel became the factfinder in the non-jury trial.

Last, the instant case does not present a situation where [Saxon's] admissions of guilt were admissible at trial. These admissions, which Judge Streitel was privy to, were highly prejudicial and not admissible at trial.

Saxon's Brief at 27-28.

We first summarize the applicable law regarding recusal when it is raised

as an ineffectiveness claim. As this Court has long recognized:

The Pennsylvania Supreme Court has suggested that "[t]he better practice in a multi-judge county would be to have the trial conducted by someone other than the judge who presided over [pre-trial matters] particularly where there is a waiver of jury accepted. **Commonwealth v. Paquette**, 451 Pa. 250, 258, 301 A.2d 837, 841 (1973). The Court again articulated a preference for this practice in **Commonwealth v. Goodman**, 454 Pa. 358, 362, 311 A.2d 652, 654 (1973), as it concluded "that a judge should honor a request for recusation where prejudicial information is received in a pre-trial proceeding that would be otherwise inadmissible during the trial of the cause." Whether a trial court should recuse himself thus depends upon "the type of evidence that the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal." **Commonwealth v. Lee**, 262 Pa. Super. 280, 291, 396 A.2d 755, 760 (1978). The judge should also recuse himself whenever there is substantial doubt as to his ability to preside impartially. **Commonwealth v. Boyle**, 498 Pa. 486, 490, 447 A.2d 250, 252 (1982). **The burden to show prejudice, however, is on the party seeking recusal**. **Commonwealth v. Council**, 491 Pa. 434, 421 A.2d 623 (1980)[.]

"If the evidence is admissible or not of a highly prejudicial nature, recusal is not required", [**Lee**, 396 A.2d at 760], and while

it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required and has not been made the basis for setting aside a verdict reached in an otherwise proper trial. ***Commonwealth v. Baxter***, 282 Pa. Super. 467, 422 A.2d 1388 (1980). This principle appears to be based on "the prevailing view that judicial fact-finders are capable of disregarding most prejudicial evidence." [***Council***, 421 A.2d at 625] (footnote omitted). ***Therefore, the failure of trial counsel to request recusal of the trial judge [is] not per se, without more, ineffective representation***.

***Commonwealth v. Lewis***, 460 A.2d 1149, 1151-52 (Pa. Super. 1982) (paragraph break and emphasis added; some citations omitted). Stated differently, "the mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge." ***Commonwealth v. Postie***, 110 A.3d 1034, 1038 (Pa. Super. 2015) (citation omitted).

Here, we first note that, due to Judge Streitel's retirement, the testimony from the PCRA hearing was heard by another jurist. The PCRA court, the Honorable Analisa Sondergaard, first detailed the testimony from the original plea hearing, the waiver hearing, and the testimony presented at the PCRA hearing. ***See*** PCRA Court Opinion, 10/7/23, at 3-23. She then concluded that, although Saxon's ineffectiveness claim had arguable merit, trial counsel had a reasonable basis for not seeking recusal. The court explained:

At first glance, the ineffectiveness argument on this issue seems to have some merit. However, taking the entire record and the totality of the circumstances into account, it is clear that trial counsel was not ineffective for failing to ask for recusal. [Saxon's] testimony that he had no recollection of having a conversation

with trial counsel about requesting a different judge for the bench trial is not credible and not supported by the record. [Trial counsel] testified that he told [Saxon] his concerns about requesting a different judge and his concerns about the chance of being assigned a [certain jurist]. He told [Saxon] the reasons why he thought Judge Streitel would be fair. [Trial counsel] testified that he discussed with [Saxon] the advantages and disadvantages of having a jury trial [versus] a nonjury trial in front of Judge Streitel.

[Trial counsel] also testified that [Saxon] knew that his trial would be in front of Judge Streitel when he waived his right to a jury. In addition, at the hearing in which [Saxon] waived his right to jury trial, Judge Streitel made it clear that she would be hearing and deciding [Saxon's] cases. [Saxon] asked no questions and expressed no concerns; he even agreed that he was satisfied with [trial counsel's] representation. [Saxon] knowingly, intelligently, and voluntarily waived his right to a jury trial and agreed to a bench trial in front of Judge Streitel.

PCRA Court Opinion, 10/7/22, 24-25.

Judge Sondergaard further explained why trial counsel had a reasonable basis for not seeking Judge Streitel's recusal:

It is also abundantly clear that trial counsel and [Saxon] made a strategic, reasonable, and well planned decision to not ask Judge Streitel to recuse herself. [Trial counsel] testified that he made inquiries about Judge Streitel because he did not primarily practice in Chester County. He called on other members of the bar and was told that Judge Streitel would give him a fair trial and a fair verdict. Judge Streitel was an experienced judge and had been on the bench for over ten years. Even after hearing the emotional victim impact statements, [trial counsel] was confident that Judge Streitel would give them a fair trial. He testified that throughout the course of the case, Judge Streitel's rulings were founded in logic, she was articulate, she was intellectually honest, and she was appropriate.

[Trial counsel] testified that "Judge Streitel has a reputation of being a very bright, thoughtful judge that will not be swayed by emotion, but that she understands what the parameters are. She

understands reasonable doubt.  She understands sufficiency of the evidence."

*Id.* at 25 (citation to record omitted).

Judge Sondergaard also cited to trial counsel's testimony to establish that Saxon agreed to have Judge Streitel hear his bench trial:

> When questioned about conversations he had with [Saxon] about Judge Streitel sitting as the judge on a bench trial, [trial counsel] explained:
>
> > What I distinctly remember was asking [Saxon], you know, are you comfortable with going to trial in front of this judge?  He asked me, [trial counsel], what do you think?  And what I just recounted with you for the last half hour is that I thought she could be fair, and I thought she was a good judge, and I thought that she would be intellectually honest, and, sure enough, it turned out I was right.
>
> (N.T., 4/18/22, p. 63).  [Trial counsel] testified that [Saxon] knew the reasons [trial counsel] wanted to have a bench trial in front of Judge Streitel and [Saxon] agreed with that strategy.

PCRA Court Opinion, 10/7/22, at 25-26 (citation to record omitted).

Our review of the record supports the PCRA court's conclusions.  In her opinion cited above, Judge Sondergaard stated specifically that she found the testimony of trial counsel to be more credible than that of Saxon.  As a matter of credibility, the PCRA court believed trial counsel's version of the contested facts.  We cannot disturb this determination.  *See Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Saxon's claims to the contrary are unavailing. Although he concedes that credibility is for the PCRA court, Saxon contends that the PCRA court's credibility determinations are not supported by the record. In making this argument, however, Saxon stresses only certain isolated portions of trial counsel's testimony. **See** Saxon's Brief at 29-33. For example, he challenges the PCRA court's finding that he agreed with trial counsel prior to the waiver hearing that he would proceed in bench trial before Judge Streitel. According to Saxon, "the specific fact that [he] agreed with trial counsel' strategy simply does not appear anywhere in the record." **Id.** at 33. He claims that he "did not testify that he made this decision after being advised by [trial counsel]." **Id.**

Our review of the PCRA hearing transcript supports Judge Sondergaard's conclusion that trial counsel testified Saxon agreed with the trial strategy before the jury waiver hearing. The fact that there is no evidence to contradict this conclusion falls squarely on Saxon, who had the burden of proof. **Johnson**, **supra**. Saxon's direct testimony consisted of a single question to which Saxon responded that he did not recall trial counsel telling him he could have a bench trial before a different judge. PCRA counsel did not ask Saxon if he had disagreed with trial counsel's testimony or that he did not know he would be proceeding before Judge Streitel prior to the waiver hearing. Indeed, it can be inferred from the Commonwealth's cross-examination of him that he did in fact agree with trial counsel's strategy. **See** N.T., 4/18/22, at

- 11 -

72 (testifying he knew his non-jury trial would be before Judge Streitel and, although he had questions about proceeding before her, he did not mention them to trial counsel; "I paid him and just went with it").

Having found a reasonable basis, the PCRA court did not address prejudice. However, even if we were to accept Saxon's claim that trial counsel had no reasonable basis, we would nonetheless agree with the Commonwealth that Saxon cannot establish prejudice. As noted above each case involving a claim of ineffectiveness for failing to request recusal must be assessed on its on facts. *Lewis*, *supra*.

The circumstantial evidence tending to show that Saxon supplied drugs that resulted in the male decedent's death at No. 616-2018 was overwhelming. As succinctly summarized by the Commonwealth:

> The evidence established that [Saxon] was the sole heroin supplier to the male victim on September 30, 2017. There was a direct timeline of events tracing back to [Saxon] as the supplier, of the heroin/fentanyl that killed the male victim. The male victim was known to purchase his heroin in Norristown, and [Saxon] lived in Norristown. The male victim was driven on September 30, 2017 to the exact block where [Saxon] lived in Norristown to purchase heroin. Cell phone records showed a conversation between the male victim and [Saxon] the night the male victim picked up the heroin/fentanyl at [Saxon's] house. After the male victim was driven home, he went into his house and remained there. Within four hours of picking up the heroin/fentanyl from [Saxon], the male victim was found dead.

Commonwealth's Brief at 46.

Moreover, Saxon was acquitted of drug delivery resulting in death and involuntary manslaughter in the female decedent's case at No. 2448-2018.

We reject Saxon's claim that he established sufficient prejudice because he received a longer minimum sentence after being convicted by Judge Streitel than the seven-year minimum provided in his rejected plea agreement. Saxon was only going to plead to two felonies while Judge Streitel found him guilty at the two dockets of eight felonies. Placed in this context, Saxon cannot demonstrate prejudice. Thus, for the foregoing reasons, Saxon's first ineffectiveness claim fails. ***See***, ***e.g.***, ***Commonwealth v. Lott***, 581 A.2d 612, 616 (Pa. Super. 1990) (holding that the defendant failed to demonstrate that he was prejudiced by trial counsel's failure to seek recusal of trial court which previously heard and denied his suppression motion).

In his second claim of ineffectiveness, Saxon asserts that trial counsel did not have a reasonable or strategic basis for asking Ms. Archdeacon, the male decedent's long-term girlfriend, whether Saxon was the male decedent's exclusive drug dealer. According to Saxon "[t]his fact had not surfaced in the trial until [trial] counsel highlighted it." Saxon's Brief at 39. Additionally, Saxon asserts that "[t]he prosecutor quickly revisited this on redirect making it very clear that [the male decedent] had identified [him] as his exclusive dealer." ***Id.*** According to Saxon, trial counsel had no reasonable or strategic basis for establishing this fact because counsel "had already established that [Ms. Archdeacon] had no knowledge from whom [the male decedent] had obtained his drugs on the night of his death and the multiple days leading up to his death." ***Id.*** at 39-40.

Saxon further asserts that he was prejudiced because the "prosecution had not [proved the fact of exclusivity] on direct examination but made a point of emphasizing [it] on redirect after it was brought out by the defense." *Id.* at 40. Saxon notes that trial testimony established that the male decedent was "evidently high" when Ms. Archdeacon picked him up and took him to Norristown; thus, suggesting a second dealer. *Id.*

In rejecting Saxon's ineffectiveness claim, the Judge Sondergaard first explained:

> Once again, at first blush this claim seems like it may have some arguable merit. However, an examination of the trial transcript and the entire record establishes that [Saxon's] claim is without merit.
>
> ***
>
> A review of the entire trial transcript reveals that [Saxon's] claim that this question established [him] as the dealer that supplied the drugs that killed [the male decedent], and ultimately lead to his conviction, is false. Even without this question, the Commonwealth established that [Saxon] supplied the drugs that killed [the male decedent]. The totality of Ms. Archdeacon's testimony, as well as [the male decedent's] cell phone records, established the timeline of [the male decedent's] movements and activities leading up to his death. Unlike the evidence in the female victim's death that opened the door to the possibility that someone else could have supplied the drugs that killed her, there is no such evidence in [the male decedent's] case.
>
> ***
>
> There was absolutely no evidence that [the male decedent] had another heroin dealer except for [Saxon]. Trial counsel asking Ms. Archdeacon about [Saxon] being [the male decedent's] exclusive dealer was not the sole evidence on this issue.

- 14 -

PCRA Court Opinion, 10/7/22, at 26-28.

Judge Sondergaard further rejected Saxon's claim that trial counsel's inquiry had no reasonable or strategic basis:

> In addition, [trial counsel] testified at the PCRA hearing regarding his strategy surrounding why he asked the question. First, he testified that he expected Ms. Archdeacon to state that [Saxon] was not [the male decedent's] exclusive dealer. This answer would have allowed him to argue that the evidence was not beyond a reasonable doubt. Second, [trial counsel] testified that even if he did not get the expected answer, he intended to use her answer to argue that her testimony was biased and not credible. Ms. Archdeacon's motivation to testify against [Saxon] was called into question, and this was in fact what he argued at trial.
>
> Trial counsel's well-reasoned explanation about why he asked the question, and his intended use of whatever answer he received, shows that he was not ineffective in his representation of [Saxon]. [Trial counsel] acknowledged that the evidence against [Saxon] regarding the male [decedent] was much stronger than the evidence regarding the female [decedent]. He maximized his defense strategy and used the information and arguments available to him in [Saxon's] defense. [Saxon's] claim that trial counsel was ineffective is without merit and must be dismissed.

PCRA Court Opinion, 10/7/22, at 28-29.

Our review of the record supports Judge Sondergaard's conclusions. Once again, Saxon focuses on a single question asked Ms. Archdeacon, while ignoring the rest of the Commonwealth's evidence linking him to the sale of the heroin/fentanyl on September 30, 2017. *See supra*. The record belies Saxon's claim that absent Ms. Archdeacon's answer regarding exclusivity, the Commonwealth was unable to establish his guilt beyond a reasonable doubt.

In sum, the PCRA court correctly concluded that the Saxon's ineffective assistance of trial counsel claims were without merit. We therefore affirm the court's order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2023