J-S08019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS BERNARD KING | : | |
| | : | |
| Appellant | : | No. 1691 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 27, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0003434-2018

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　　　　**FILED JUNE 24, 2026**

Louis Bernard King appeals from the judgment of sentence entered after he was convicted of driving under the influence (DUI) and other Vehicle Code violations.[1]  He challenges the trial court's denial of his motion to recuse and the sufficiency and weight of the evidence for his DUI conviction.  We affirm.

The issues in this appeal arise from King's non-jury trial on November 19, 2024.  At the start of the proceeding, the prosecutor advised the court of the Commonwealth's intent "to present consciousness of guilt evidence."  N.T., 11/19/24, at 3.  She asserted that the case was previously scheduled for trial on April 11, 2019, but King did not appear.  She explained that the judge in the previous trial issued a bench warrant, and King did not respond

---

[1] 75 Pa.C.S. §§ 3802(d)(2) (DUI of a drug or combination of drugs), 3313(d)(1) (driving in right lane), 1301(a) (driving unregistered vehicle), 1786(f) (operating without required financial responsibility), and 4703(a) (operating without official certificate of inspection).

to any efforts from pretrial services until May of 2024, when he was "picked up" in Delaware. *Id.* at 4. The prosecutor argued that King's failure to appear for trial, combined with his failure to respond to the bench warrant, would be relevant and admissible at trial. *Id.* at 4–5.

King opposed the introduction of evidence that he did not appear at his first scheduled trial, contending that this "uncharged conduct" was "highly prejudicial" and "highly irrelevant" to the DUI charge. *Id.* at 8. Defense counsel emphasized that King did not receive related discovery, and the Commonwealth did not provide notice under Pennsylvania Rule of Evidence 404(b)(3). *Id.* at 8–10. The trial court ruled that the evidence would be admissible. *Id.* at 11. King maintained he would need additional time to prepare a defense based on the additional offered evidence. The trial court discussed the logistics of receiving testimony over multiple days. After an off-the-record sidebar discussion, the prosecution stated it would "not proceed on consciousness of guilt." *Id.* at 17.

Defense counsel then moved for a recusal based on the information the prosecutor presented to the trial judge. The judge denied the motion.

> MR. VONDERHEIDE: . . . You have now heard extremely prejudicial information related to my client. And being the fact finder, I don't believe that was appropriate. So I am making a motion for recusal at this time.
>
> THE COURT: Okay.
>
> MS. FREI: Your Honor, certainly your Honor is able to sort through testimony.
>
> THE COURT: I am.

MS. FREI: Not to mention this is a 2018 case. Your Honor has put together that this was a bench warrant pickup.

THE COURT: Yes. And I have the file.

So no, I'm not going to recuse myself.

Let's proceed.

MS. FREI: Yes, your Honor.

MR. VONDERHEIDE: Your Honor, just for the record, based on the things that Ms. Frei testified to on the record about alleging certain conduct by my client, I do believe this has become much more prejudicial than just saying they intend to proceed with consciousness of guilt.

The information that Ms. Frei testified to essentially does create a higher level of prejudice.

THE COURT: I note your objection. I believe that I can be fair and impartial notwithstanding.

And I don't believe that the information that was shared with me -- and, again, I have the file, I have information in here that goes back quite a ways, that shows the bench warrants in here.

So we're going to proceed and I'm not going to recuse myself.

*Id.* at 18–19.

At trial, the Commonwealth presented the testimony of Trooper John Pisker, as well as video from the trooper's dashboard camera. Trooper Pisker testified that when he was on patrol at 3:06 p.m. on March 19, 2018, he saw King driving in the left lane of the Route 30 bypass for an extended period. *Id.* at 32–33. He described that he observed King "drift within the lane" one time, although King's vehicle did not "weave" or otherwise break the lane line. *Id.* at 33, 65–66, 68. Because the vehicle's registration was expired, Trooper Pisker explained, he initiated a traffic stop. *Id.* at 33–34. King promptly

pulled over to the right shoulder but did not use his turn signal or hazard lights. *Id.* at 34–35, 66–67. Trooper Pisker acknowledged that King used his turn signal earlier when he briefly moved to the right lane. *Id.* at 73.

Trooper Pisker testified that when he spoke with King, he smelled burnt marijuana; when asked, King initially said he smoked the day prior and was wearing the same clothes. *Id.* at 38. The trooper noted that King "was very slow in his movement, his pupils were dilated, his eyes were very glossy and reddish, like almost like bloodshot." *Id.* Trooper Pisker observed that King was slow to respond to questioning and changed his answers between where he was coming from and going. *Id.* at 79. When Trooper Pisker asked King to step out of the vehicle for field tests, King admitted he smoked earlier that day "and then caught himself and said it was the day before." *Id.* at 39.

Trooper Pisker conducted standard field sobriety tests, which he explained could show whether a person had "divided-attention skills" needed to safely operate a motor vehicle. *Id.* at 41–43. Trooper Pisker testified that he observed several indicators that King was impaired: on the walk-and-turn test, King lost his balance during the instruction phase and pivoted improperly during the test; on the one-leg stand test, King failed to look at his foot, swayed, and raised his arm 24 seconds into the test. *Id.* at 45–49, 88–90. Trooper Pisker testified that he conducted two additional tests for drug impairment: on the modified Romberg balance test, King displayed eyelid tremors, overestimated 30 seconds' time at 36 seconds, and counted out loud

after being instructed to count in his own head; on the lack of convergence test, King's eyes failed to converge. *Id.* at 51–53, 91.

Trooper Pisker testified that when he arrested King, King's eyes were glossy and dilated, and King had a blank stare. *Id.* at 56. King's vehicle contained a lighter, rolling paper, and an empty plastic baggie that smelled of marijuana. *Id.* at 58. King did not consent to a blood draw. *Id.* at 60.

The trial court found Trooper Pisker to be credible. *Id.* at 116. The trial court found King guilty of DUI, failing to drive in the right lane, and driving with expired registration and inspection and without insurance.

On January 27, 2025, the trial court sentenced King to the mandatory minimum term of 72 hours to 6 months of confinement and payment of a $1000.00 fine and court costs; the sentence was stayed pending appeal. King filed timely post-sentence motions, which were denied by operation of law. King timely appealed. King and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

King presents three issues for review:

I.  Did the trial court abuse its discretion by denying [King's] motion for recusal after the trial court heard highly prejudicial and inadmissible evidence?

II. Was the evidence insufficient to support [King's] conviction for driving under the influence, 75 Pa.C.S.A. § 3802(d)(2), where the Commonwealth failed to prove that he was under the influence of a drug or combination of drugs to a degree that impaired his ability to safely drive a vehicle?

III. Did the trial court abuse its discretion by denying [King's] request for a new trial on the basis that the verdict on the

- 5 -

charge of driving under the influence, 75 Pa.C.S.A. § 3802(d)(2), was against the weight of the evidence?

King's Brief at 5.

In his first issue, King challenges the denial of his motion for the trial court to recuse. King submits that his failure to appear at his 2019 trial date was highly prejudicial (as evidence of consciousness of guilt) and inadmissible (because the Commonwealth did not provide notice). Therefore, King argues that established law required the trial court to recuse, and the court abused its discretion by failing to do so.

This Court reviews the denial of a motion for a trial judge to recuse for an abuse of discretion. *Commonwealth v. Kearney*, 92 A.3d 51, 60–61 (Pa. Super. 2014). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. King*, 839 A.2d 237, 240 (Pa. 2003) (italics omitted) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). Notably, "our review of a trial court's denial of a motion to recuse is exceptionally deferential." *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014) (citing *Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa. Super. 2007)).

> "We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." *Commonwealth v. Harris*, 979 A.2d 387, 391–92 (Pa. Super. 2009). Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially

or if impartiality can be reasonably questioned. *In re Bridgeport Fire Litig.*, 5 A.3d 1250, 1254 (Pa. Super. 2010).

*See id.* (internal quotations omitted).

Relevant here, a judge should recuse from presiding if there is a substantial doubt that the judge can preside impartially after hearing evidence that "is inadmissible and of a highly prejudicial nature." *Commonwealth v. Lott*, 581 A.2d 612, 615 (Pa. Super. 1990) (quoting *Commonwealth v. Bristow*, 538 A.2d 1343, 1345 (Pa. Super. 1988)). Even if there is no actual prejudice, recusal may be required if a judge hears information "that would [be] incompetent" at trial and that is "of a sufficiently inflammatory nature to arouse a prejudice against the defendant." *Commonwealth v. Goodman*, 311 A.2d 652, 654 (Pa. 1973).

Cases illustrate that information so "highly prejudicial" as to require recusal can include direct evidence of a defendant's guilt, such as his own admission to the crimes charged. *See Lott*, 581 A.2d at 616 (confession to police); *Commonwealth v. Gibson*, 567 A.2d 724, 727 (Pa. Super. 1989) (guilty plea). It can include "highly inflammatory" testimony about other crimes in the same class as those charged, such as a statement that defendants charged with possessing narcotics were in fact trafficking narcotics. *E.g.*, *Goodman*, 311 A.2d at 654 n.4; *see also Commonwealth v. Jones*, 393 A.2d 737, 739–40 (Pa. Super. 1978) (*en banc*) (per curiam) ("A prior conviction for the same type of offense is highly prejudicial.").

However, when "the evidence is admissible or not of a highly prejudicial nature, recusal is not required." *Commonwealth v. Lewis*, 460 A.2d 1149,

- 7 -

1151–52 (Pa. Super. 1983) (quoting **Commonwealth v. Lee**, 396 A.2d 755, 760 (Pa. Super. 1978), *overruled on other grounds*).  Furthermore, a trial judge sitting as finder of fact "is presumed to disregard inadmissible evidence and consider only competent evidence."  **Kearney**, 92 A.3d at 61 (citing **Commonwealth v. Fears**, 836 A.2d 52, 71 n.19 (Pa. 2003), *overruled on other grounds*).

Here, the information presented to the trial court was not so "highly prejudicial" as to require recusal.  There may be a viable argument that King's failure to appear for his 2019 trial, combined with his five-year absence from Pennsylvania, is circumstantial evidence that King knew he was guilty.  **Cf. Commonwealth v. Carter**, 597 A.2d 1156, 1160–61 (Pa. Super. 1991) (endorsing a consciousness-of-guilt instruction where a defendant did not appear at trial and then "fled, and/or concealed his whereabouts to avoid prosecution").

The central issue for the trial court to resolve in King's DUI trial was whether he was capable of safely driving on March 19, 2018, not whether he knew in the following years that he was guilty.  King's absence from his first scheduled trial is neither a direct admission of guilt nor the same type of offense as driving under the influence of drugs.  Because King's other conduct was not so inflammatory as to prejudice the trial court against him, we follow the presumption that the trial court could disregard this information.  We do not perceive that the trial court misapplied the law, reached a manifestly unreasonable judgment, or used partiality, prejudice, bias, or ill-will to deny

King's recusal motion. In sum, the trial court acted within its discretion. King's first issue fails.

In his second issue, King challenges the sufficiency of the evidence to sustain his DUI conviction. He argues that neither his previous use of marijuana nor the totality of the other relevant factors support the conclusion that he was impaired.

For a challenge to evidentiary sufficiency, "our standard of review is de novo, and our scope of review is plenary." ***Commonwealth v. Marberger***, 344 A.3d 403, 411 (Pa. Super. 2025) (brackets omitted). We must determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Id.*** at 410 (quoting ***Commonwealth v. Kim***, 888 A.2d 847, 851 (Pa. Super. 2005).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Id.*** at 410–11 (quoting ***Kim***, 888 A.2d at 851–52) (brackets omitted).

Under the charged provision of the Vehicle Code: "An individual may not drive . . . a vehicle" if he "is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive . . . the vehicle." 75 Pa.C.S. § 3802(d)(2). To convict a defendant under this section, the Commonwealth must introduce "evidence of impairment" rather than proof of a certain amount of a controlled substance in the defendant's blood. *Marberger*, 344 A.3d at 411 (citing *Commonwealth v. Smith*, 320 A.3d 674, 691 (Pa. Super. 2024)). Factors to consider can include the defendant's manner of driving, performance on field tests, demeanor, appearance, and odor. *See Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009). Where a defendant's blood contained marijuana metabolites but did not indicate that he was impaired at the time of driving, the evidence is not sufficient. *See Commonwealth v. Etchison*, 916 A.2d 1169, 1172 (Pa. Super. 2007). However, evidence that a "defendant refused to submit to chemical testing" can be probative as to whether he was presently impaired from drug use. *Marberger*, 344 A.3d at 412 (citing *Commonwealth v. Caraballo*, 325 A.3d 1025, 1031 (Pa. Super. 2024)).

Here, there was sufficient evidence, viewed in a light most favorable to the Commonwealth, for the trial court to find that King was impaired from marijuana at the time of the stop on March 19, 2018. First, the trial court could find that King smoked marijuana that same day from the smell of burnt marijuana, King's statement before he "caught himself," and the empty baggie; this finding is also supported by King's refusal to submit to chemical

- 10 -

testing. In addition, as Trooper Pisker explained, the field sobriety tests showed King's "divided-attention skills" and ability to follow instructions were impaired. Finally, Trooper Pisker observed King to be slow to move and to answer questions, which supports a finding that King would not be able to respond to sudden hazards while driving. Although there was also ample evidence that King was alert, aware, and not driving dangerously when Trooper Pisker first observed him, the standard for evidentiary sufficiency recognizes that the finder of fact is free to weigh competing factors in reaching a conclusion. Thus, the evidence was sufficient to prove that King had used marijuana to a degree that impaired his ability to safely drive when Trooper Pisker stopped him. King's second issue fails.

In his third issue, King challenges the denial of his motion for a new trial on the basis that the verdict was against the weight of the evidence. King included his weight issue in his post-sentence motions. The trial court did not rule on these motions, which were thus denied by operation of law. **See** Pa.R.Crim.P. 702(B). King does not challenge the trial court's inaction during Rule 702's time limit. Rather, he contests the trial court's explanation, which was produced after his motions were already denied, that the trial court afforded appropriate weight to the evidence. **See** Trial Court Opinion, 9/29/25, at 9–11. King argues that the trial court lacked a reasonable basis to accept the trial evidence as establishing his impairment and that the evidence of lack of impairment was of greater weight. King's Brief at 38 (citing **Commonwealth v. Landis**, 89 A.3d 694 (Pa. Super. 2014)).

We review an evidentiary weight claim for an abuse of discretion.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the factfinder's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Landis*, 89 A.3d at 699 (quoting *Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012)) (brackets omitted).

In *Landis*, this Court held a new trial was warranted after a jury found the appellant guilty of DUI under subsections 3802(a)(1) and (c) of the Vehicle Code. *Id.* at 696. Importantly, subsection 3802(c) requires proof of a minimum blood alcohol content (BAC); the Commonwealth's only evidence of the appellant's BAC had a margin of error that left the jury to speculate whether his BAC was above the statutory limit. *Id.* at 701. The appellant did not include a weight challenge to his subsection 3802(a)(1) DUI conviction, which, like King's subsection 3802(d)(2) DUI conviction, required proof that he was incapable of safely driving. *Id.* at 699 n.7.

Here, King's conviction required proof only that he was incapable of driving safely, not that his blood exceeded a *per se* limit of a controlled substance. There was no trial evidence about a margin of error, although

Trooper Pisker acknowledged that the scientific validation of the standard field sobriety tests relates only to alcohol, and the additional tests are not scientifically validated. *See* N.T., 11/19/24, at 86–87, 92. Nonetheless, we find *Landis* distinguishable here.

Fundamentally, unlike in *Landis*, King's conviction stemmed from a non-jury trial. This Court is thus unpersuaded that the trial court abused its discretion by failing to grant King's post-sentence motion on the basis "that [the court's own] non-jury decision shocked [the court's] own conscience" or that the same judge deciding the motion "reached a verdict contrary to the evidence." *Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023) (citations omitted). King's third issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2026